[No. C032099. Third Dist. May 24, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
CHITTRA TOON MOM, Defendant and Appellant

**COUNSEL**

Eric Weaver, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, W. Scott Thorpe

and Clifford E. Zall, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HULL, J.**—In this matter we conclude the force necessary to commit the offense of rape in concert, as defined in Penal Code section 264.1, is no greater than the force necessary to commit a forcible rape within the meaning of Penal Code section 261, subdivision (a)(2). (Further section references are to the Penal Code unless otherwise designated.)

Defendant was convicted by a jury of robbery in concert of an inhabited dwelling (§§ 211, 213, subd. (a)(1)(A)), rape in concert (§ 264.1), first degree burglary (§ 459) and assault with a deadly weapon or with force likely to produce great bodily injury (§ 245, subd. (a)(1)). The jury also found a principal was armed with a firearm in the commission of each of the offenses (§ 12022, subd. (a)(1)) and defendant personally used a firearm in connection with all but the assault offense (§§ 12022.5, subd. (a)(1), 12022.53, subd. (b)).

Defendant was sentenced to an indeterminate term of 25 years to life for the rape, to be served concurrently with a nine-year term for the robbery and a 10-year enhancement for personal use of a firearm. Terms on the other offenses were stayed pursuant to section 654.

Defendant appeals contending there is insufficient evidence to support his conviction of rape in concert. We affirm.

### FACTS AND PROCEDURAL HISTORY

At approximately 1:00 a.m. on March 30, 1998, five men broke into an apartment on Fontana Avenue in Stockton and committed various offenses against the inhabitants. Residing in the apartment at the time were a man and his wife; their son, D.; their daughter, K.; K.'s boyfriend, H.; and K.'s two children. The five intruders, later identified as Chanbunthait Proeung, Chanthoeurn Chhuon, Seng Neth, Sopee Khen and defendant, all wore white handkerchiefs over their faces and at least two of them carried guns.[1]

At the time of the illegal entry, K. and her boyfriend were asleep in one bedroom, and D. was asleep in another. The others were asleep in the living

---

[1] On the record before us, one of the perpetrators is referred to as Souvan Khun. We take judicial notice of our file in *People v. Proeung* (C032298, app. pending), an appeal by Chanbunthait Proeung from his conviction for the same home invasion offenses. At the trial

room. The five intruders arrived at the apartment in a white Honda. Proeung and one of the other men kicked in the front door and the five men entered.

Awakened by a loud noise, K. opened her bedroom door and saw "a lot of people in there." One man pointed a gun at her and someone told her, "Don't move." She was pulled from the bedroom, and another man with a gun removed her necklace and bracelets and escorted her to the living room. The man with the gun pointed it at H., removed H.'s necklace and ordered him into the living room.

Meanwhile, two of the other men kicked open the door to D.'s bedroom. One of them pointed a gun at D.'s face. D. was ordered into the living room, where someone yanked off his necklace and took his rings.

Defendant went into K.'s bedroom "looking for some stuff." He found a camcorder and a couple of watches. He put the watches in his pocket and returned to the living room. Defendant began waving a gun back and forth, and the victims were ordered onto the floor.

Two of the intruders pulled K. down onto her back. Proeung had sexual intercourse with her while she cried and said, "Stop, don't do this . . . ." The intruders demanded money, and K. and D. said they had none. Someone struck D. in the head several times with the butt of a gun.

Officers Perez and Marconi of the Stockton Police Department were patrolling the Lakeview area of North Stockton when they received a call at 1:21 a.m. to respond to a possible residential robbery in progress on Fontana Avenue. The officers arrived at the residence at 1:22 a.m. and approached the front door. Perez knocked on the door. One of the perpetrators ran to the front window and said, "Oh, shit, the police come." The men ran out of the apartment through a sliding glass door in D.'s bedroom.

Seng Neth, Chanbunthait Proeung, Chanthoeurn Chhuon and defendant were jointly charged with first degree home invasion robbery in concert (§§ 211, 213, subd. (a)(1)(A)), rape in concert (§ 264.1), first degree residential burglary (§ 459) and assault by means of force likely to cause great bodily injury or with a deadly weapon (Pen. Code, § 245, subd. (a)(1)).[2] The trial court granted a defense motion to sever the trials of the individual defendants. Defendant was the first to be tried and was convicted and sentenced as indicated previously.

of that matter, one of the police officers investigating the case testified Proeung identified himself as Khun Sovann.

[2]From the record in *People v. Proeung, supra,* C032298, we are told Sopee Khen was never apprehended.

## DISCUSSION

Defendant contends the evidence presented at trial does not support his conviction for rape in concert because there was insufficient evidence of force. Defendant argues section 264.1 requires force greater than that necessary to accomplish a forcible rape under section 261. Defendant further contends the trial court erred in failing to instruct the jury of this heightened level of force.

Section 264 sets the punishment for rape at three, six or eight years. However, section 264.1 provides: "The provisions of Section 264 notwithstanding, in any case in which the defendant, voluntarily acting in concert with another person, *by force or violence* and against the will of the victim, committed an act described in Section 261, 262, or 289, either personally or by aiding and abetting the other person, that fact shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial, or if admitted by the defendant, the defendant shall suffer confinement in the state prison for five, seven, or nine years." (Italics added.) Section 261 defines rape as "sexual intercourse accomplished with a person not the spouse of the perpetrator . . ." under various circumstances, including "[w]here it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2).)

Defendant contends that because section 261 already defines rape in terms of the use of force, inclusion of the "force or violence" language in section 264.1 implies a legislative intent that a greater level of force is necessary to accomplish the aggravated offense. Defendant argues that any other interpretation would render the force or violence language of section 264.1 surplusage.

In matters of statutory construction our fundamental concern is with legislative intent. (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) In order to determine intent we begin with the language of the statute itself. (*Ibid.*) If the language is clear, there is no need to resort to other indicia of intent. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) "[E]very statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect. [Citation.] Legislative intent will be determined so far as possible from the language of the statutes, read as a whole." (*County of Fresno v. Clovis Unified School Dist.* (1988) 204 Cal.App.3d 417, 426 [251 Cal.Rptr. 170].) If possible,

significance should be given to every word of a statute and any construction which renders a word surplusage should be avoided. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798-799 [268 Cal.Rptr. 753, 789 P.2d 934].)

 In support of his interpretation of section 264.1, defendant analogizes forcible rape in concert with forcible lewd conduct. Section 288, subdivision (a), reads in relevant part: "Any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body . . . of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony . . . ." Section 288, subdivision (b) proscribes such conduct "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury . . . ."

In *People v. Cicero* (1984) 157 Cal.App.3d 465 [204 Cal.Rptr. 582], this court evaluated the meaning of "force" as used in section 288, subdivision (b). Because forcible lewd acts carry greater penal consequences than nonforcible lewd acts, we indicated subdivision (b) "must . . . proscribe conduct significantly different from that proscribed by subdivision (a)." (*People v. Cicero, supra,* 157 Cal.App.3d at pp. 473-474.) We concluded: "[I]f commission of a lewd act itself constitutes the minimum proscribed conduct under subdivision (a), then in cases where 'force' is charged under subdivision (b), . . . it is incumbent upon the People to prove that the defendant used physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself." (*Id.* at p. 474; see also *People v. Neel* (1993) 19 Cal.App.4th 1784, 1787 [24 Cal.Rptr.2d 293].)

The analogy defendant seeks to draw is not apt. In *Cicero,* we were concerned with the difference between nonforcible lewd conduct under section 288, subdivision (a), and forcible lewd conduct under section 288, subdivision (b). In order for this legislative scheme to make sense, it is necessary to attribute a meaning to "force" as used in subdivision (b) which is different from or greater than the force necessary to accomplish the lewd act. In other words, because the lewd act itself requires some minimal force in the nature of a touching, something more is required for a forcible lewd act.

The same distinction need not be made between forcible rape, as defined in section 261, subdivision (a)(2), and rape in concert, as defined in section 264.1, in order to make sense of the overall legislative scheme. Section 264.1 addresses not only rape as defined in section 261, but also rape of a spouse (§ 262) and penetration with a foreign object (§ 289). Each of these offenses is defined in various ways, not all of which require the application

of force. Thus, it is possible to commit rape without the use of any force greater than that which would be necessary to complete the act of sexual intercourse. Section 264.1 imposes increased punishment for rape when two conditions are met—the rape was committed (1) in concert with another, and (2) "by force or violence and against the will of the victim . . . ." Because rape may be committed without the use of force or violence, and thus would not fall within section 264.1 even if done in concert, there is no reason to believe the Legislature intended to attribute a different meaning to the terms "force" and "violence" than that applicable to section 261. In other words, section 264.1 may be read as including only that category of rape which involves the use of force or violence and excluding all other categories. So interpreted, there is no surplusage of language.

In *People v. Wheeler* (1977) 71 Cal.App.3d 902 [139 Cal.Rptr. 737], the jury was instructed that "force and violence" within the meaning of section 264.1 means any wrongful application of physical force, including the slightest unlawful touching if done in an insolent, rude, or angry manner. The defendant argued this was inconsistent with section 261, former subdivision 2, which at the time called for "that amount of physical force required in the circumstances to overcome the victim's resistance."[3] (71 Cal.App.3d at p. 907.) This court concluded: "Nothing in the language of section 264.1 or its legislative history supports the conclusion inherent in defendant's argument that the enhanced punishment was to apply only in cases of forcible rape within the meaning of section 261, subdivision 2. We are persuaded, instead, to the alternative conclusion that the statute was designed to discourage gang sexual assaults where any unlawful force is used." (*Ibid.*)

As originally enacted in 1967, and as it appeared at the time of the offense charged in *Wheeler*, section 264.1 established an enhanced punishment of five years to life whenever a "rape" was committed "by force or violence" by one "voluntarily acting in concert with another person . . . ." (Stats. 1967, ch. 1551, § 1, p. 3722.) As part of the same legislation, sections 286.1 and 288b were enacted establishing enhancement punishments for sodomy and oral copulation, respectively, when committed in concert by force or violence and against the will of the victim. (Stats. 1967, ch. 1551, §§ 2, 3, p. 3722.) A bill memorandum issued by the Senate and Assembly legislative secretaries to the Governor explained that this legislation "increases the penalty for certain *forcible* sex offenses when committed by a defendant

---

[3]At the time of *Wheeler*, section 261, former subdivision 2, the predecessor to section 261, subdivision (a)(2), defined rape as an act of sexual intercourse with a female not the wife of the perpetrator "[w]here she resists, but her resistance is overcome by force or violence." (Stats. 1970, ch. 1301, § 1, p. 2405.) Effective January 1, 1981, section 261 was amended to delete resistance as an element of rape. (See Stats. 1980, ch. 587, § 1, p. 1595; *People v. Cicero, supra*, 157 Cal.App.3d at p. 480.)

acting in concert with another person." (Bill Mem., Sen. Bill No. 759, (1967 Reg. Sess.) Aug. 25, 1967, italics added.) This memorandum suggests the legislative intent at the time was to target certain existing forcible sex offenses when committed in concert. As one court explained: "The purpose behind the increased punishment provided for by the 'in concert' statute is to discourage 'gang type' sexual assaults. [Citation.] It also exhibits a legislative recognition that rape is even more reprehensible when committed by two or more persons." (*People v. Jones* (1989) 212 Cal.App.3d 966, 969 [260 Cal.Rptr. 853].)

Subsequent changes to section 264.1 replaced the word "rape" with a reference to section 261 and added sections 262 and 289. The punishment was also changed to a determinate sentence of five, six or seven years and was later increased to five, seven or nine years. (See Stats. 1976, ch. 1139, § 155, p. 5106; Stats. 1978, ch. 579, § 15, p. 1983; Stats. 1982, ch. 1111, § 4, p. 4025; Stats. 1994, ch. 1188, § 2.) However, there has been no attempt to change the force or violence language of section 264.1.

■ "[W]hen the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction. Accordingly, reenacted portions of the statute are given the same construction they received before the amendment." (*Marina Point, Ltd. v. Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].)

■ There is nothing in the language or legislative history of section 264.1 which would suggest the Legislature intended to impose a requirement of greater force and violence than that necessary for a forcible rape. On the contrary, despite our holding in *Wheeler* that *any* force will suffice to bring a rape in concert within the terms of section 264.1, the Legislature has made no attempt to impose a different meaning on the term in any of its subsequent amendments. Consistent with *Wheeler* and the legislative history of section 264.1, we conclude the section requires no greater force than that necessary for forcible rape under section 261, subdivision (a)(2).

Defendant contends there is insufficient evidence of force in the record. However, this contention is based on his erroneous interpretation of the force requirement. Force, within the meaning of section 261, subdivision (a)(2), is that level of force substantially different from or substantially greater than that necessary to accomplish the rape itself. (*People v. Bergschneider* (1989) 211 Cal.App.3d 144, 153 [259 Cal.Rptr. 219]; *People v. Kusumoto* (1985) 169 Cal.App.3d 487, 492-494 [215 Cal.Rptr. 347]; *People v. Cicero, supra,* 157 Cal.App.3d at p. 474.) This is not a heavy burden. For example, in

*Bergschneider,* the court found there was sufficient force in the defendant's act of pushing aside the victim's hands. (*Bergschneider, supra,* 211 Cal.App.3d at p. 153.) Defendant here concedes there is sufficient evidence to establish a forcible rape within the meaning of section 261, subdivision (a)(2).

Finally, defendant contends the court was required to instruct the jury on the degree of force necessary for a violation of section 264.1. Again, however, this contention is based on defendant's mistaken interpretation of the force requirement. The trial court was not required to give an instruction consistent with defendant's erroneous interpretation of the law.

### DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Callahan, J., concurred.