[No. S109734. Aug. 9, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
BRYANT D. GRIFFIN, Defendant and Appellant.

COUNSEL

Patricia A. Scott, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Ana R. Duarte, Susan Sullivan Pithey, Donald E. De Nicola, Marc J. Nolan and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

Kent S. Scheidegger and Kymberlee C. Stapleton for Criminal Justice Legal Foundation as Amicus Curiae on behalf of Plaintiff and Respondent.

OPINION

**BAXTER, J.**—Defendant Bryant D. Griffin was convicted by a jury of five counts of child molestation and one count of forcible rape. He argued on appeal that his forcible rape conviction must be reversed because the trial court erred in failing to instruct sua sponte on the special legal definition of "force" required for conviction of that offense. He further contended the evidence would have been insufficient as a matter of law to sustain his conviction of forcible rape under that standard.

A majority of the Court of Appeal agreed, concluding that the definition of "force," as it is used in the forcible rape statute (Pen. Code, § 261, subd. (a)(2)),[1] has a specialized legal meaning that would not be known to the average lay juror. The court placed principal reliance on *People v. Cicero* (1984) 157 Cal.App.3d 465 [204 Cal.Rptr. 582] (*Cicero*), the case that first articulated a specialized legal definition of the element of force required for conviction of lewd acts by force on a child under the age of 14. (§ 288, subd. (b)(1).) *Cicero* held that conviction of forcible lewd acts on a minor requires evidence of "physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself." (*Cicero,* at p. 474.) The Court of Appeal in this case believed that same specialized definition of "force" must be applied to forcible rape prosecutions under section 261, subdivision (a)(2), and that trial courts have a sua sponte duty to specially instruct the jury with that definition in such cases. The Court of Appeal went on to reverse defendant's conviction of forcible rape for insufficient evidence of force under *Cicero*'s definition of that element.

We conclude that the Court of Appeal erred in applying the *Cicero* definition of force applicable in forcible lewd conduct prosecutions to this

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

rape case. The Court of Appeal's holding is contrary to the plain language of the forcible rape statute, and fails to recognize the significant differences the element of "force" plays in the crimes of forcible lewd acts on a minor and forcible rape. For reasons explained more fully below, we conclude the trial court was under no duty to instruct the jury sua sponte on the commonly understood definition and usage of the term "force" as it is used in the rape statute (§ 261, subd. (a)(2)). Under the applicable and deferential substantial evidence standard of review, we find that the force utilized by defendant, as that term is commonly understood, is sufficient to sustain the conviction of forcible rape. Accordingly, the judgment of the Court of Appeal shall be reversed.

## FACTS AND PROCEDURAL BACKGROUND

Defendant had known Latasha J. since she was five years old. He and Latasha's mother, Vernida H., had an off-and-on relationship since 1989. Defendant began molesting Latasha in 1994 when she was between 10 and 11 years old. He typically had her touch his penis. He would then place his hand and mouth on her vagina. Latasha told her grandmother, aunt, and a schoolteacher about the incidents, but did not tell her mother because defendant told Latasha her mother would not believe her. Latasha's teacher reported the initial molestations to the police, and defendant ultimately pled guilty to a misdemeanor of annoying or molesting a child under the age of 18. (§ 647.6.) Defendant was placed on probation and ordered to stay away from Latasha, who temporarily went to live with her maternal grandmother.

Latasha's mother believed her relatives had convinced Latasha to make up these things about defendant because they did not like him. Latasha eventually came to believe there was no reason to report further misconduct since defendant had only received probation for molesting her. Latasha moved back in with her mother, brother, and defendant when she turned 13. She would arrive home from school about 1:30 in the afternoon, while her mother was still at work. She was often home alone with defendant, who worked sporadically. He molested her about once or twice a week between 1996 and 1997. Again, the molestations followed a familiar pattern—defendant would place Latasha's hand on his erect penis, then place his hand inside her vagina, then orally copulate her. He told Latasha no one would believe her, and that her mother might not love her anymore if she told her about it. Latasha did not tell anyone about the ongoing sexual abuse, which continued until mid-1998 when Latasha had a boyfriend and spent more time away from home.

In May 2000, defendant no longer lived with Latasha's mother, but sometimes spent the night. One night in May, Latasha came home late. She

did not have a key to the house, and defendant let her in. She went into the kitchen to prepare a bottle for her infant daughter. Defendant joined her, instructed her to touch his penis until it was erect, and digitally penetrated her.

Defendant and Latasha then entered the den and sat down on the floor, where defendant orally copulated her. Defendant told Latasha to lie on the floor. Latasha testified that defendant, without her consent and against her will, partially penetrated her vagina with his penis after moving his body on top of hers while holding or pinning her arms to the floor so that she was unable to move them:

"Q. Let me ask you, specifically. You are sitting on the floor and what did he do, specifically?

"A. Lay down. He told me to lay down and I laid down and he started putting his mouth on my vagina and then he got on top of me and I was . . . .

"Q. . . . Was he holding your wrists with his hands?

"A. Yes.

"Q. And were your arms on the floor?

"A. On my back on the floor, yes.

"Q. He was on top of you?

"A. (Nods.)

"Q. Were you able to move your arms?

"A. No, they were like that.

"Q. Was what he did without your consent?

"A. Yes.

"Q. Against your will?

"A. Yes.

"Q. And he held your arms down while he put his penis inside you?

"A. Yes."

On redirect examination, Latasha confirmed that she did not want to have sexual intercourse with defendant, and that it was without her consent and against her will.

Believing defendant would still avoid punishment for his sexual assaults upon her, Latasha initially told no one about the incident. However, defendant and her mother were involved in a custody battle over their three-year-old son, which prompted Latasha to tell her mother about the molestations because she did not want defendant doing the same thing to her little half brother. Latasha's mother at first was too distracted by the custody proceedings to tell the police about the molestations and rape. Later in July, Latasha's mother told the mediator in the custody dispute matter about Latasha's accusations of sexual assault. She and Latasha then went to the police.

Defendant testified and denied that any molestations or rape had occurred. He explained that in 1994 he began to discipline Latasha. She would never comply and would never listen to him. She told him he was not her father and she did not have to obey him. He acknowledged having pled guilty to what he called "harassment" of Latasha. He also admitted a prior conviction for purchasing and possessing cocaine base for sale.

Defendant testified he rarely saw Latasha when he lived with her mother because he was always at work, and Latasha often left the house for a few days at a time. He denied ever touching Latasha inappropriately and denied all sexual assault allegations. He suggested Latasha and her mother had made the stories up to gain leverage in the custody dispute.

Defendant was charged with committing a lewd act upon a child between October 1, 1996 and February 1997; oral copulation of a person under the age of 16 between February 1997 and October 1998; sexual penetration by a foreign object of a person under the age of 16 between February 1997 and October 1998; oral copulation of a person under the age of 18 between May 1, 2000, and May 30, 2000; sexual penetration with a foreign object of a person under the age of 18 between May 1, 2000, and May 30, 2000, and forcible rape. He was convicted as charged and sentenced to an aggregate state prison term of six years.

A majority of the Court of Appeal concluded that the definition of "force," as used in the forcible rape statute (§ 261, subd. (a)(2)), has a specialized legal meaning that would not be known to the average lay juror, and requires proof of "physical force substantially different from or substantially greater than that necessary to accomplish the lewd act . . . ." (Cf. *Cicero, supra,* 157

Cal.App.3d at p. 474 [defining "force" in forcible lewd act prosecutions under § 288, former subd. (b), now subd. (b)(1)]; see also *People v. Pitmon* (1985) 170 Cal.App.3d 38, 52 [216 Cal.Rptr. 221] [same]; CALJIC No. 10.42 [same].) The Court of Appeal majority opined that "[j]ust what actions or gestures will constitute the 'force' sufficient to demonstrate the sexual act was against the will of a victim varies with the circumstances and age of the victim." After reviewing the facts of several sexual abuse decisions, the court concluded that "the record evidence does not permit a finding [defendant] used 'force' to overcome Latasha's will in order to commit the act of intercourse. That is to say, there was no evidence [defendant] applied any force substantially greater than or different from that necessary in order to commit the act of intercourse." With specific regard to the evidence that defendant held Latasha's wrists pinned to the floor as he penetrated her, the Court of Appeal majority concluded, "[i]n the context of this case [defendant's] act of holding her wrists is equivocal at best. Given the absence of evidence of any type of physical gesture designed to overcome Latasha's will, holding her wrists at this particular moment during the sex act is just as consistent with consensual relations."

Justice Perluss, in a separate concurring and dissenting opinion, disagreed that the element of force in the crime of rape has any specialized legal definition, that the trial court was under a sua sponte duty to instruct on the definition of "force" as used in section 261, subdivision (a)(2), or that the record evidence pertaining to defendant's use of force in raping the victim was insufficient to sustain his conviction of rape.

## DISCUSSION

■ Rape is a general intent offense. (*People v. Osband* (1996) 13 Cal.4th 622, 685 [55 Cal.Rptr.2d 26, 919 P.2d 640].) Forcible rape is defined as "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator . . . [¶] . . . [¶] (2) [w]here it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2).)[2]

■ The term "force" as used in the rape statute is not specifically defined. Although trial courts, generally, have a duty to define technical terms that have meanings peculiar to the law, there is no duty to clarify, amplify, or otherwise instruct on commonly understood words or terms used in statutes or jury instructions. "When a word or phrase ' "is commonly understood by

---

[2] Rape *without* proof of force, violence, duress, menace, or fear of immediate and unlawful bodily injury can also be perpetrated against victims who, because of a mental disorder or developmental or physical disability, are incapable of giving legal consent (§ 261, subd. (a)(1)), and under other statutorily prescribed circumstances.

those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request." ' [Citations.] A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning. [Citation.]" (*People v. Estrada* (1995) 11 Cal.4th 568, 574 [46 Cal.Rptr.2d 586, 904 P.2d 1197].)

There are several nonlegal definitions of "force" that have been cited in the cases construing penal provisions that incorporate the term. "One nonlegal meaning of force is 'to press, drive, attain to, or effect as indicated against resistance . . . by some positive compelling force or action.' (Webster's 3d New Internat. Dict. (1993) p. 887, col. 2, italics omitted.) Another is 'to achieve or win by strength in struggle or violence.' (*Ibid.*)" (*People v. Elam* (2001) 91 Cal.App.4th 298, 306 [110 Cal.Rptr.2d 185] [assault with intent to commit forcible oral copulation under § 220].) If we conclude the Legislature's use of the term "force" in the rape statute was not intended to have any specialized legal meaning significantly different from such common usage definitions, then trial courts are under no obligation to instruct sua sponte on the definition of the term. (*People v. Elam, supra,* 91 Cal.App.4th at p. 306.)

■ A plain reading of section 261 in its entirety supports a conclusion that the Legislature did not intend the term "force," as used in the rape statute, to be given any specialized legal definition. (See *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 978 [90 Cal.Rptr.2d 260, 987 P.2d 727] [statutory subdivisions within same section must be interpreted consistently with one another].) In 1990, the Legislature added "duress" and "menace" to section 261 as further means by which rape could be accomplished against a victim's will, and added subdivisions (b) and (c) to specifically define those terms. (Stats. 1990, ch. 630, § 1, p. 3096.) Although the Legislature thus saw fit to expressly and specifically define the terms "menace" and "duress" as utilized in section 261, subdivision (a)(2), it has not seen fit to do the same for the term "force," also found in subdivision (a)(2). This supports a conclusion that no specialized legal meaning was ever intended for that term. (See *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 88 [260 Cal.Rptr. 520, 776 P.2d 222].)

■ Nor is there anything in the common usage definitions of the term "force," or in the express statutory language of section 261 itself, that suggests force in a forcible rape prosecution actually means force "*substantially* different from or *substantially* greater than" the physical force normally inherent in an act of consensual sexual intercourse. (*Cicero, supra,* 157 Cal.App.3d at p. 474, italics added.) To the contrary, it has long been recognized that "in order to establish force within the meaning of section 261, [former] subdivision (2), the prosecution need only show the defendant used

physical force of a degree sufficient to support a finding that the act of sexual intercourse was against the will of the [victim]." (*People v. Young* (1987) 190 Cal.App.3d 248, 257–258 [235 Cal.Rptr. 361].) Even prior to the pivotal 1980 amendment of the rape statute, when the victim's resistance to the rapist's attack and the rapist's act of overcoming that resistance by force or violence still had to be shown (see discussion below), it was nevertheless understood that " ' "*The kind of physical force is immaterial*; . . . it may consist in the taking of indecent liberties with a woman, or laying hold of and kissing her against her will." ' " (*People v. Tollack* (1951) 105 Cal.App.2d 169, 171 [233 P.2d 121], quoting *People v. Bradbury* (1907) 151 Cal. 675, 677 [91 P. 497], italics added.)

The legislative history of the 1980 amendment of section 261 further supports a conclusion that the Legislature intended "force" to have a common usage meaning, rather than a specialized legal definition, and that hence there is no sua sponte duty to specially instruct the jury in a rape case on the definition of that term.

"Until its amendment in 1980, former section 261, subdivisions 2 and 3 defined rape as an act of sexual intercourse under circumstances where the person resists, but where 'resistance is overcome by force or violence' or where 'a person is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution . . . .' [¶] The Legislature amended section 261 in 1980 to delete most references to resistance. (Stats. 1980, ch. 587, § 1, p. 1595.) In pertinent part, the statute now defines rape as 'an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: . . . [¶] (2) Where it is accomplished against a person's will by means of force or fear of immediate and unlawful bodily injury on the person or another.' " (*People v. Barnes* (1986) 42 Cal.3d 284, 292 [228 Cal.Rptr. 228, 721 P.2d 110], fns. omitted, (*Barnes*).)[3] "Prior to 1981, when an accused was charged with rape by means of force or violence, the jury was instructed, in accordance with the language of former section 261, subdivision 2, that the 'element' of resistance must be proved. (Former CALJIC No. 10.00 (1979 rev.).) By contrast, the 1982 revision of CALJIC No. 10.00 mirrored the statutory change and now allows the jury to convict of rape by force or fear under section 261, subdivision (2), *without proof of victim resistance*." (*Barnes, supra,* 42 Cal.3d at p. 296, fns. omitted.)

The elimination of the resistance requirement from the rape statute was the Legislature's response to concerns that rape victims who resisted their

---

[3] As noted, section 261, subdivision (2) was subsequently amended to add sexual penetration by "duress" or "menace" as alternate means by which rape could be accomplished against a victim's will (now § 261, subd. (a)(2)), and to add subdivisions (b) and (c), which specifically define those terms. (Stats. 1990, ch. 630, § 1, p. 3096.)

attackers oftentimes suffered greater physical injuries than victims who did not resist, and to the further circumstance that prosecutors were increasingly either unable or unwilling to file rape charges where victim resistance could not be proved. (*Barnes, supra,* 42 Cal.3d at p. 302.) We observed in *Barnes* that elimination of the resistance requirement from the rape statute "effected a crucial change in the fact-finding process" (*id.* at p. 296) "consistent with the modern trend of removing evidentiary obstacles unique to the prosecution of sexual assault cases." (*Id.* at p. 301, 228 Cal.Rptr. 228, 721 P.2d 110.) We explained that "By removing resistance as a prerequisite to a rape conviction, the Legislature has brought the law of rape into conformity with other crimes such as robbery, kidnapping and assault, which require force, fear, and nonconsent to convict." (*Id.* at p. 302.)

Whereas, prior to the 1980 amendment of section 261, conviction of forcible rape required that the accused employ that degree of force necessary under the circumstances to overcome the victim's resistance (*Barnes, supra,* 42 Cal.3d at p. 304), under the modern rape statute, the jury no longer evaluates the element of force in terms of whether it physically prevents the victim from resisting or thwarting the attack. As one court observed, "By eliminating the resistance requirement, the Legislature clearly intended to change prior law with regard to the use of force in rape." (*People v. Young, supra,* 190 Cal.App.3d at p. 259.) "[T]he fundamental wrong at which the law of rape is aimed is not the application of physical force that causes physical harm. Rather, the law of rape primarily guards the integrity of a woman's will and the privacy of her sexuality from an act of intercourse undertaken without her consent. Because the fundamental wrong is the violation of a woman's will and sexuality, the law of rape does not require that 'force' cause physical harm. Rather, in this scenario, 'force' plays merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been undertaken against a victim's will." (*Cicero, supra,* 157 Cal.App.3d at p. 475.)

*Barnes*'s recognition that the element of force plays a similar role in robbery and rape prosecutions lends further support to our conclusion that the Legislature did not intend "force" to have a special meaning as used in the rape statute. "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) As with the crime of rape, resistance by the victim is not a required element of robbery. (*People v. Mungia* (1991) 234 Cal.App.3d 1703, 1708 [286 Cal.Rptr. 394].) As with rape, for purposes of the crime of robbery, the degree of force utilized is immaterial. (*People v. Garcia* (1996) 45 Cal.App.4th 1242, 1246 [53 Cal.Rptr.2d 256] [light "tap" on shoulder of robbery victim]; see also *People v. Jones* (1992) 2 Cal.App.4th 867, 871 [3 Cal.Rptr.2d 602].) Critically, this court has held that "The terms 'force' and 'fear' as used in the

definition of the crime of robbery have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors." (*People v. Anderson* (1966) 64 Cal.2d 633, 640 [51 Cal.Rptr. 238, 414 P.2d 366].) By parity of reasoning, the same conclusion must be reached regarding the requirement of force found in the rape statute.

The Court of Appeal majority placed principal reliance on *Cicero, supra,* 157 Cal.App.3d 465, the case that first articulated the specialized legal definition of "force" required for conviction of lewd acts by force on a child under the age of 14. (§ 288, subd. (b)(1).) *Cicero* held that conviction of forcible lewd acts on a minor requires evidence of "physical force substantially different from or substantially greater than that necessary to accomplish the lewd act . . . ." (*Cicero*, at p. 474.) The following year the same court, in *People v. Pitmon, supra,* 170 Cal.App.3d 38, held that because the requirement of "force" in section 288, subdivision (b) has "a specialized meaning not known to the average lay juror," the trial court had erred in failing to instruct sua sponte on that term. (*Pitmon,* at p. 52.)

The Court of Appeal majority in this case believed that same specialized definition of "force" must be applied to forcible rape prosecutions under section 261, subdivision (a)(2), and that trial courts accordingly have a sua sponte duty to specially instruct the jury with that definition in forcible rape cases. The Court of Appeal's reliance on *Cicero* was misplaced.

*Cicero* was not a forcible rape case. There is considerable difference between the crime of lewd acts by force on a child under the age of 14, with which *Cicero* was directly concerned (see § 288, former subd. (b), now subd. (b)(1)), and the crime of forcible rape. Section 288 is broken down into two subdivisions and proscribes very different conduct than that which constitutes forcible rape under section 261, subdivision (a)(2). Subdivision (a) of section 288 criminalizes all lewd acts committed with a child under the age of 14 with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child. (§ 288, subd. (a).) Subdivision (b)(1) of section 288, in turn, increases the punishment for the same acts proscribed in subdivision (a) when they are accomplished by the use of force, violence, duress, menace, or threat of great bodily harm. (§ 288, subd. (b)(1).)

The *Cicero* court examined the two subdivisions of section 288 as they related to one another and concluded, "Subdivisions (b) [now (b)(1)] and (a) of section 288 on their face draw a distinction between those lewd acts that are committed by force and those that are not. Because of the application of sections 1203.066, subdivision (a)(1), and 667.6, subdivision (d), the violation of subdivision (b) is manifestly a more serious offense than the violation of subdivision (a). The sentencing court cannot grant probation to a defendant

convicted of subdivision (b). (§ 1203.066, subd. (a)(1).) In many cases, a defendant convicted of two or more offenses under subdivision (b) will face a mandatory term in state prison that is at least twice as long as the term available to a defendant who commits multiple offenses under subdivision (a). (§ 667.6, subd. (d).) *The consequential statutory distinction between subdivisions (a) and (b) must be given significance, because the Legislature is not presumed to use statutory language in a sense which would render nugatory or redundant important provisions of a statute.* [Citations.] Subdivision (b) must therefore proscribe conduct significantly different from that proscribed by subdivision (a)." (*Cicero, supra,* 157 Cal.App.3d at pp. 473–474, italics added.)

The *Cicero* court was clearly focusing on the distinctions between nonforcible lewd acts under section 288, subdivision (a), and forcible lewd acts proscribed by former subdivision (b), now (b)(1), of that section. The court reasoned that in order for the statutory scheme of section 288 to make sense, the Legislature must have intended that the "force" required to commit a forcible lewd act under subdivision (b) be substantially different from or substantially greater than the physical force inherently necessary to commit a lewd act proscribed under subdivision (a).

■ That same distinction does not arise in the context of the rape statute. The element of force in forcible rape does not serve to differentiate between two forms of unlawful sexual contact as it does under section 288. When two adults engage in *consensual* sexual intercourse, whether with or without physical force greater than that normally required to accomplish an act of sexual intercourse, the forcible rape statute is not implicated. The gravamen of the crime of forcible rape is a sexual penetration *accomplished against the victim's will* by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury. As reflected in the surveyed case law, in a forcible rape prosecution the jury determines whether the use of force served to overcome the will of the victim to thwart or resist the attack, *not* whether the use of such force physically facilitated sexual penetration or prevented the victim from physically resisting her attacker. The Legislature has never sought to circumscribe the nature or type of forcible conduct that will support a conviction of forcible rape, and indeed, the rape case law suggests that even conduct which might normally attend sexual intercourse, when engaged in with force sufficient to overcome the victim's will, can support a forcible rape conviction. (See *People v. Tollack, supra,* 105 Cal.App.2d at p. 171 [" ' "The kind of physical force is immaterial . . . it may consist in . . . laying hold of and kissing [the victim] against her will." ' "].) Nor has the rape law ever sought to quantify the amount of force necessary to establish the crime of forcible rape, at least not until the courts in *People v. Mom* (2000) 80 Cal.App.4th 1217, 1224 [96 Cal.Rptr.2d 172], *People v. Bergschneider* (1989) 211 Cal.App.3d 144, 153 [259 Cal.Rptr. 219], and the

instant case sought to apply *Cicero*'s special definition of "force" for forcible lewd act prosecutions to forcible rape cases.

The question for the jury in this case was simply whether defendant used force to accomplish intercourse with Latasha against her will, not whether the force he used overcame Latasha's physical strength or ability to resist him. As we explained in *Barnes*, "Although resistance is no longer the touchstone of the element of force, the reviewing court still looks to the circumstances of the case, including the presence of verbal or nonverbal threats, or the kind of force that might reasonably induce fear in the mind of the victim, to ascertain sufficiency of the evidence of a conviction [of forcible rape]." (*Barnes, supra,* 42 Cal.3d at p. 304.)

■ We therefore conclude that the Court of Appeal erred in applying *Cicero*'s "substantially different from or substantially greater" definition of force, applicable in forcible lewd conduct prosecutions under section 288, subdivision (b)(1) (see CALJIC No. 10.42), to this forcible rape case. The trial court was under no duty to specially instruct sua sponte on the commonly understood definition of force as it is used in the rape statute (§ 261, subd. (a)(2)). To the extent *People v. Mom, supra,* 80 Cal.App.4th 1217, 1224, and *People v. Bergschneider, supra,* 211 Cal.App.3d 144, 153, reached the same conclusion, under similar reasoning, as did the Court of Appeal majority in this case, those decisions are disapproved.[4]

In considering defendant's claim of insufficiency of the evidence of force necessary to affirm his conviction of forcible rape, we must determine only whether, on the record as a whole, any rational trier of fact could find him guilty beyond a reasonable doubt. (*Barnes, supra,* 42 Cal.3d at p. 303.) We view the evidence in the light most favorable to the prosecution, and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].)

---

[4] We recognize that recently, in *In re John Z.* (2003) 29 Cal.4th 756, 763 [128 Cal.Rptr.2d 783, 60 P.3d 183], a forcible rape case under section 261, subdivision (a)(2) involving the *withdrawal* of initial consent to sexual intercourse, this court cited *People v. Mom, supra,* 80 Cal.App.4th at page 1224, when briefly pondering whether the defendant's use of force was sufficient to convict him of forcible rape. Clearly, the forcible conduct utilized in that case—grabbing the victim's waist, pulling her back down, and rolling her over to facilitate the continuation of sexual intercourse (*In re John Z.,* at p. 760)—would have been sufficient under any standard. We did not have the issue of whether the *Cicero/Mom* specialized definition of force is applicable in forcible rape cases directly before us in *In re John Z.* Accordingly, our citation to *People v. Mom,* and our mention of the "substantially greater/substantially different" definition of force followed in *People v. Mom* was dicta, and is not controlling on the point of law we decide today.

Under that applicable deferential standard of review, we conclude the evidence in this case is sufficient to support the jury's determination that defendant used force, as that term is commonly used and understood, to accomplish intercourse against Latasha's will. Defendant pinned Latasha's arms to the floor as he penetrated her vagina with his penis. The victim unequivocally testified she did not consent to the act of intercourse and that it was accomplished against her will. At trial, defendant never claimed that he reasonably believed Latasha consented to intercourse. Rather, he denied ever touching Latasha inappropriately and denied all sexual assault allegations, claiming Latasha and her mother had falsely accused him to gain leverage in an ongoing custody dispute. In evaluating the credibility of both the victim's and defendant's testimony, the jury had before it evidence of defendant's long-standing history of sexually molesting Latasha as a minor. He began molesting her in 1994 when she was between 10 and 11 years old and had continued to molest her once or twice a week during the years 1996 and 1997. Several years earlier he had pled guilty to a misdemeanor of annoying or molesting a child under the age of 18 and had been placed on probation and ordered to stay away from Latasha. Finally, moments before the act of sexual penetration that formed the basis of the forcible rape count here in question, defendant, following a familiar pattern, had ordered Latasha to touch his penis until it was erect, digitally penetrated her, and orally copulated her.

■ On appeal, defendant now urges there was no evidence that Latasha demonstrated any unwillingness to engage in these sexual activities, or that she objected to the intercourse until defendant had partially penetrated her, at which point she was able to stop him by getting up. These contentions, however, do not demonstrate that the evidence was insufficient to support the forcible rape conviction. Defendant had engaged in various types of criminal sexual conduct (digital penetration, oral copulation) with Latasha in the past which, based on her reports to her family members and teacher, led to his prior conviction of molesting a minor. Moreover, Latasha had never previously encountered defendant's attempt to have intercourse with her, as this was his first attempt. The jury could reasonably infer that by pinning her arms to the floor, defendant was able to achieve penetration on the occasion in question without Latasha's consent before she was able to register her objection. The circumstance that defendant did not apply additional force to continue the intercourse after Latasha objected does not eliminate his culpability for his initial penetration of Latasha against her will by use of force.

The evidence, taken as a whole and viewed in the light most favorable to the guilty verdict, is sufficient to support the conviction of forcible rape.

## CONCLUSION

The judgment of the Court of Appeal is reversed, and the matter remanded to that court for further proceedings consistent with the views expressed herein.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.