Filed 8/24/20  P. v. Jaramillo CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JORGE PEREZ JARAMILLO,<br><br>    Defendant and Appellant. | 2d Crim. No. B296712<br>(Super. Ct. No. 18CR05562)<br>(Santa Barbara County) |

Jorge Perez Jaramillo appeals the judgment entered after a jury convicted him of attempted rape of an unconscious or asleep person (Pen. Code,[1] §§ 261, subd. (a)(4)(A), 664; count 1) and attempted forcible rape (§§ 261, subd. (a)(2), 664; count 2).[2]  The

---

[1] All statutory references are to the Penal Code unless otherwise noted.

[2] Appellant was charged with rape of an unconscious or asleep person and forcible rape.  The jury found him not guilty of

trial court sentenced him to three years in state prison, consisting of the midterm of three years on count one and a concurrent three-year term on count 2. Appellant was also ordered to pay various fines, fees and assessments including a $900 restitution fine (§ 1202.4, subd. (b)), $80 in court operations assessments (§ 1465.8, subd. (a)(1)), and $60 in criminal conviction assessments (Gov. Code, § 70373).

Appellant contends that his conviction of attempted forcible rape in count 2 must be reversed because insufficient evidence of the charge of forcible rape was adduced at the preliminary hearing, and the evidence at trial was insufficient to establish the force element of the offense. Appellant also contends that a concurrent term was imposed on count 2 in violation of section 654. Finally, appellant claims the court erred in imposing the restitution fine and the court operations and criminal conviction assessments without first determining his ability to pay them, as contemplated in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We affirm.

## STATEMENT OF FACTS
### *Prosecution*

On the night of May 31, 2018, Jane Doe went to her friend Janie Tinoco-Thornhill's home in Santa Maria with plans to stay the night. Doe knew Tinoco-Thornhill through Tinoco-Thornhill's roommate Juan Posada, whom Doe had previously dated.

After Doe and Tinoco-Thornhill purchased beer, Doe drank a 32-ounce beer in the garage of the house. Doe later purchased another 32-ounce beer and returned to the garage at about

---

those offenses, but guilty of the lesser included offenses of attempted rape of an unconscious or asleep person and attempted forcible rape.

2

midnight. At about 2:00 or 2:30 a.m., appellant, whom Doe had not previously met, joined Doe and Tinoco-Thornhill in the garage. After Doe had consumed about one-fifth of her second beer, she, appellant, and Tinoco-Thornhill each drank a shot of tequila.

Doe, Tinoco-Thornhill, and appellant purchased food and returned to the garage. A short time later Doe vomited in the hallway bathroom. Tinoco-Thornhill took Doe into her bedroom. Tinoco-Thornhill then returned to the garage and had sex with appellant.

Doe lay down on Tinoco-Thornhill's bed while fully clothed and fell asleep. She later woke up to discover that her pants and underwear were pulled down and that a man she later identified as appellant was lying behind her and "having sex with [her]," i.e., his "penis was inserted in [her] vagina." Doe reached back and stated, "Who the fuck are you?" and "What the fuck are you doing?" She told appellant to "stop" but he did not do so. When Doe extended her left arm toward appellant and tried to turn around, he "grabbed" her wrist, "directed it back in the position it was," and said "Shhhh." Appellant eventually stopped having intercourse with Doe, left the bedroom, and entered the hallway bathroom. Doe then recognized appellant as the perpetrator.

Doe went to Posada's bedroom and lay down in the bed next to Posada. She was crying but did not tell Posada what had happened. Posada told Doe he would drive her home, but Doe replied that she wanted Tinoco-Thornhill to do so. Doe then went into the hallway and told Tinoco-Thornhill that appellant had raped her. Tinoco- Thornhill drove Doe home and Doe called the police.

3

Later that morning, a sexual assault examination was performed on Doe. A low amount of male DNA was subsequently detected on a swab obtained from Doe's inner thigh and on the non-sperm fractions of swabs taken from Doe's posterior fourchette and vagina. An analysis of the swab from Doe's inner thigh resulted in a partial Y haplotype (DNA profile) which was consistent with appellant's reference haplotype. Appellant was excluded as a DNA contributor to the sperm fraction of the posterior fourchette swab. Swabs from Doe's underwear and the waistband of her pants both contained a mixture of DNA from at least two males, with one major contributor and at least one minor contributor. Appellant could not be excluded as the major source of the DNA because the detected major haplotype was consistent with his reference haplotype.

Jamie Gerigk testified as an expert on rape trauma syndrome. Gerigk described the three stages of rape trauma syndrome: (1) in the acute stage after the assault, the victim often feels shock, disbelief, and confusion; (2) in the outward adjustment stage, the victim tries to forget the assault but starts to decline emotionally; and (3) in the resolution stage, the victim starts to emotionally deal with the assault.

### Defense

The day after the incident, Doe told the police that appellant had ejaculated inside of her. She also said she had difficulty understanding what had happened because she was very intoxicated when the incident happened.

Marc Taylor, the owner and director of a Ventura forensic science laboratory, reviewed the forensic tests performed in appellant's case. Taylor found no evidence of vaginal penetration from the DNA results as to the vaginal swab. Taylor also opined

4

that the DNA found on the inner thigh swab did not require sexual activity. Taylor also explained that it is difficult to exclude an individual as the contributor of DNA when the detected DNA is a mixture of multiple individuals.

## DISCUSSION

### *Count 2 - Information*

Appellant contends his conviction of attempted forcible rape in count 2 must be reversed because the charged offense of forcible rape was not supported by evidence presented at the preliminary hearing. We disagree.

An information filed after a preliminary hearing "must 'charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed.' (§ 739.) The information cannot thereafter be amended 'so as to charge an offense not shown by the evidence taken at the preliminary examination.' (§ 1009.) A defendant charged by information may move the court [under section 995] to dismiss one or more of the counts on the ground that it was not supported by a finding of reasonable or probable cause at the preliminary hearing. [Citations.]" (*Griffith v. Superior Court* (2011) 196 Cal.App.4th 943, 948-949.) In reviewing the denial of a section 995 motion on such grounds, "we must draw all reasonable inferences in favor of the information [citations] and decide whether there is probable cause to hold the defendant[] to answer, i.e., whether the evidence is such that 'a reasonable person could harbor a strong suspicion of the defendant's guilt' [citations]." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1072.)

"'Forcible rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator against the person's will by means of force or violence.'" (*People v. Clark* (2011) 52 Cal.4th 856, 948 (*Clark*).)  To establish the offense, "'the prosecution need only show the defendant used physical force of a degree sufficient to support a finding that the act of sexual intercourse was against the will of the [victim].'  [Citation.]" (*People v. Griffin* (2004) 33 Cal.4th 1015, 1023-1024.)

Appellant was charged in a single-count felony complaint with rape of an unconscious or asleep person in violation of section 261, subdivision (a)(4)(A).  Following the conclusion of Doe's testimony at the preliminary hearing, the prosecutor stated his intent to add an additional charge of forcible rape in violation of section 261, subdivision (a)(2).  Defense counsel objected, contending that Doe's testimony was insufficient to prove the force element of the offense.  The prosecutor replied that the force element was established by Doe's testimony that appellant continued having intercourse with her after she woke up and told him to stop, as well as her testimony that appellant had grabbed her wrist and "direct[ed] [her] arm out of the way" when she reached out toward him.

The trial court concluded that although it was a "close question" on the issue of force, the evidence was sufficient to hold appellant to answer on the charge of forcible rape.  The court reasoned that "[Doe] did wake to find herself in a situation where she was in physical intimacy that she did not consent to, and was unable, for those critical moments, to disengage because of the physical proximity that he had placed himself in, and the redirection of her arm movements are part of that.  As an alternative description of the event, I think there is probable

cause, a point you can review more closely on a 995 motion, but I think the probable cause is there for that characterization on it."

After the two-count information was filed, appellant filed a section 995 motion to dismiss count 2 (forcible rape) on the ground there was insufficient evidence to prove the force element of the offense. The trial court denied the motion.

The magistrate did not err in holding appellant to answer on the charge of forcible rape. At the preliminary hearing, Doe testified that appellant continued having intercourse with her after she told him to stop. When she reached out toward him, he grabbed her wrist and moved her arm out of the way. A reasonable trier of fact could thus find that appellant used physical force against Doe such that his act of sexual intercourse was against her will. (See, e.g., *Clark*, *supra*, 52 Cal.4th at p. 949 [evidence was sufficient to support force element of attempted forcible rape where victim yelled "Stop" and "Leave me alone"]; see also *People v. Griffin*, *supra*, 33 Cal.4th at p. 1029 [evidence was sufficient to support finding that defendant used force in committing rape where he "pinned [the victim's] arms to the floor as he penetrated her vagina with his penis" and "[t]he victim unequivocally testified she did not consent to the act of intercourse and that it was accomplished against her will"].)

Contrary to appellant's claim, it is of no moment whether his actions "prevented [Doe] from turning her body." It is well-settled that "[t]he question for a jury considering the charge of forcible rape is 'whether defendant used force to accomplish intercourse with [the victim] against her will, not whether the force he used overcame [her] physical strength or ability to resist him.' [Citation.]" (*People v. Lee* (2011) 51 Cal.4th 620, 641, fn. 15.) Appellant's claim that the evidence produced at the

7

preliminary hearing failed to support the charge of forcible rape accordingly fails.

### *Sufficiency of the Evidence*

Appellant also contends the evidence is insufficient to support his conviction of attempted forcible rape. In reviewing such claims, we "must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054-1055, internal quotation marks omitted.) We "presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) We do not resolve evidentiary conflicts. (*People v. Yeoman* (2003) 31 Cal.4th 93, 128.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*Zamudio*, at p. 357.)

Appellant's sufficiency-of-the-evidence claim is premised solely on the force element of the offense. As we already explained in rejecting appellant's first claim, the evidence is sufficient to support a finding that appellant used force against Doe such that his act of sexual intercourse was committed against her will. Moreover, appellant was convicted of *attempted* forcible rape. "Other than forming the requisite criminal intent, a defendant need not commit an element of the underlying offense." (*People v. Medina* (2007) 41 Cal.4th 685, 694.) The issue is thus not whether appellant actually used enough force to

overcome Doe's will, but rather whether he attempted to do so. Appellant's claim of insufficient evidence thus fails.

## *§ 654*

Appellant contends the court imposed a concurrent three-year term on count 2 (attempted forcible rape) in violation of section 654 because the offenses in counts 1 and 2 were based on a single physical act. He argues that "[a]ccording to Jane Doe, at the time appellant grabbed her wrist, his penis was already inside her. The act had been accomplished. There was no showing of multiple objectives or intents. [Citation.] This was a single act constituting an indivisible transaction." We are not persuaded.

"Section 654, subdivision (a), provides: 'An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.'" In determining whether a defendant may be subject multiple punishment under section 654, "[w]e [must] first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.) "Whether a defendant will be found to have committed a single physical act for purposes of section 654 depends on whether some action the defendant is charged with having taken separately completes the actus reus for each of the relevant criminal offenses. [Citations.]" (*Id.* at p. 313.)

The trial court did not violate section 654 by imposing a concurrent term on count 2. Count 1 was based on appellant's attempt to have sexual intercourse with Doe while she was

9

unconscious or asleep and was thus unable to give consent. (§ 261, subd. (a)(4)(A).)  After it was clear to appellant that Doe was actually awake, he attempted to use force to have intercourse with her against her express will.  Because the use or attempted use of force is an element of attempted forcible rape (§ 261, subd. (a)(2)), appellant did not complete the actus reus of that crime until he attempted to use such force.  The court thus did not err in implicitly finding that the two crimes were not completed by a single physical act, such that multiple punishment was not barred under section 654.

Moreover, section 654 "does not prohibit the imposition of multiple punishment for separate sexual offenses committed during a continuous attack, 'even where closely connected in time.' [Citations.]." (*People v. Hicks* (1993) 6 Cal.4th 784, 788, fn. 4.).  "[I]f a series of acts are committed within a period of time during which reflection was possible [citation], section 654 does not apply." (*People v. Kelly* (2016) 245 Cal.App.4th 1119, 1136.) "Under section 654, 'a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment. [Citations.]' [Citations.]  This is particularly so where the offenses are temporally separated in such a way as to afford the defendant [the] opportunity to reflect and renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken. [Citation.]" (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935.)

Appellant, believing that Doe was asleep or unconscious, began having sexual intercourse with her.  After she told him to stop and reached her arm back toward him, he had ample time to reflect upon what he was doing.  Instead of stopping, he moved

Doe's arm out of his way and continued having intercourse with her. Because appellant's actions constituted two separate acts between which he had an opportunity to reflect, the court did not violate section 654 by sentencing him on both counts of conviction. (*People v. Kelly*, *supra*, 245 Cal.App.4th at p. 1136.)

**Dueñas**

Appellant contends the court erred in ordering him to pay a $900 restitution fine (§ 1202.4, subd. (b)), $80 in court operations assessments (§ 1465.8, subd. (a)(1)), and $60 in criminal conviction assessments (Gov. Code, § 70373), without first determining his ability to pay those fines and assessments, as contemplated in *Dueñas*, *supra*, 30 Cal.App.5th 1157. We are not persuaded.

Appellant was sentenced on March 28, 2019, almost three months after the opinion in *Dueñas* was issued. Appellant could have, but did not, raise his current claims at the time of sentencing. Accordingly, we agree with the People that appellant's *Dueñas* claim is forfeited. (See *People v. Trujillo* (2015) 60 Cal.4th 850, 859.)

In any event, the claim lacks merit. In *Dueñas*, the court concluded that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under . . . section 1465.8 and Government Code section 70373." (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.) The court also concluded that "although . . . section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court

11

holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid.*)

With respect to appellant's $900 restitution fine, the trial court had the authority, even before *Dueñas*, to "consider[ ]" the defendant's "[i]nability to pay" whenever it "increase[ed] the amount of the restitution fine" in excess of the $300 minimum. (§ 1202.4, subds. (b)(1), (c).)  When a statute mandates a fine but requires the court to consider the defendant's ability to pay, the burden is on the defendant to object or demand a hearing to determine the ability to pay.  (*People v. McMahan* (1992) 3 Cal.App.4th 740, 749-750.)  At sentencing, appellant did not object or demand a hearing regarding his ability to pay the restitution fine, so he forfeited his right to challenge that fine on appeal.  (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154.)  Because appellant failed to object to the $900 restitution fine by asserting an inability to pay, he also cannot be heard to complain that the court failed to consider his ability to pay the $60 in criminal conviction assessment and $80 court operations assessment.  (See *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033.)

In any event, "*Dueñas* is distinguishable.  That case involved a homeless probationer, Velia Dueñas, who suffered from cerebral palsy and was unable to work.  [Citation.]" (*People v. Johnson* (2019) 35 Cal.App.5th 134, 138.)  Appellant, who was sentenced to prison, "is not similarly situated to the misdemeanor probationer in *Dueñas*.  He was ordered to pay mandatory fees and a fine under the same constellation of statutes that were at issue in *Dueñas*, but there the similarity ends." (*Id.* at p. 139.)

As the trial court noted, appellant will have the ability to earn wages while in prison.  Any due process violation arising

from the court's failure to consider appellant's ability to pay the challenged assessments was thus harmless beyond a reasonable doubt.  (*Id.* at pp. 139-140 citing *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

YEGAN, Acting P. J.

TANGEMAN, J.

13

John F. McGregor, Judge

Superior Court County of Santa Barbara

_____


Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Chung L. Mar, Deputy Attorney General, for Plaintiff and Respondent.