Filed 12/20/13

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062831 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN297907) |
| FERNANDO BERNAL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert J. Kearney, Judge. Affirmed.

Kurt David Hermansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kristine A. Gutierrez and Lynn G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II, III and IV of the Discussion.

1

Penal Code[1] section 69 makes it a crime to knowingly resist, with force or violence, an executive officer in the performance of his or her duties. In his principal argument on appeal, the defendant in this case, Fernando Bernal, argues that section 69 requires proof that the defendant used force *against* or *on* the executive officer. We reject this narrow interpretation of section 69.

Section 69 plainly covers a situation, such as the one disclosed in this record, where an officer's attempt to lawfully restrain the defendant was hampered by the defendant's quite forceful attempt to escape that restraint, including dragging the officer several feet down a bike path. Although, there is no evidence Bernal attempted to harm or otherwise touch the officer, there is ample proof that he used considerable force in attempting to escape from the restraint the officer was lawfully using on him; that force fully supports Bernal's conviction of violating section 69.

Bernal also contends the trial court was required to give a sua sponte instruction on the meaning of "force or violence" as used in section 69. Because these terms have no technical meaning peculiar to the law, no sua sponte instruction was required.

We also reject Bernal's contention the prosecutor was guilty of any prejudicial misconduct.

Accordingly, we affirm the judgment of conviction.

FACTUAL SUMMARY

Three separate incidents, which occurred during the fall of 2011, gave rise to the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

complaint filed against Bernal:

A. *September 21, 2011*

In the early morning hours of September 21, 2011, Bernal, a confederate identified as Ulice Rivera, and an unidentified female confederate robbed Phillip Broadway as he was attempting to leave a friend's home in Escondido. The robbery took place after a car one of the thieves was driving struck Broadway's car as he was trying to leave a party; when Broadway got out of his car, Bernal and Rivera began hitting Broadway while the female confederate climbed into Rivera's car and began searching it for items of value. After the assailants left, Broadway looked around his car and determined that the robbers had taken a ring, chef's knives, a sharpening tool, insurance paperwork and some business cards.

B. *October 13, 2011*

At 11:30 p.m. on October 13, 2011, two City of Escondido police officers, Russell Whitaker and Michael Duong, were on bicycles patrolling a bike path that runs along a flood control channel in Escondido. The flood control channel and bike path are in an area claimed by an Escondido street gang, the Diablos, and the area is also subject to a gang injunction.

Because the bike path is closed after dusk and is subject to a gang injunction, when the officers saw Bernal, Manuel Lopez and a juvenile on the path, they approached the trio. Bernal and Lopez are members of the Diablos' rival, the Westside gang. As they were approaching the men, Lopez took a steak knife out of one of his pockets and

3

dropped it on the ground. In response, Officer Duong secured the knife and placed Lopez in handcuffs.

Officer Whitaker performed a patdown search of Bernal and discovered an axe in Bernal's front waistband. Officer Whitaker removed the axe and placed it in a secure area. Officer Whitaker then attempted to handcuff Bernal.

Officer Whitaker stood in back of Bernal and was using his left hand to hold on to Bernal's left hand while he used his right hand to retrieve his handcuffs from his belt. As Officer Whitaker was attempting to put the handcuffs on Bernal, Officer Whitaker felt Bernal's hands push against him as Bernal attempted to get onto the balls of his feet and begin running. Officer Whitaker dropped the handcuffs and grabbed Bernal around Bernal's waist with both of his hands. Bernal then began running west on the bike path, dragging Officer Whitaker with him. Bernal jerked his hips a couple of times—first to the right and then to the left—in an apparent effort to throw off Officer Whitaker. Bernal was able to drag Officer Whitaker approximately eight to 10 yards down the bike path before both men fell to the ground.

According to Officer Whitaker, from the time he was holding Bernal's left hand and was trying to handcuff Bernal, until the two men fell together on the bike path, he never lost physical contact with Bernal. Officer Whitaker, who was wearing shorts, suffered bruised and scraped knees.

After Officer Whitaker and Bernal fell to the ground, Officer Duong ran over and assisted Officer Whitaker in handcuffing Bernal.

4

After all three suspects were securely restrained, a further search uncovered that each of the suspects had one or more large rocks in his pocket, and the juvenile had a can of spray paint with no cap.

C. *November 30, 2011*

On November 30, 2011, an Escondido resident reported that his home had been burglarized that day and that a television, a video camera, jewelry, clothing and a safe containing paperwork which belonged to family members were missing.

A short time later, Bernal was seen walking down a street in Escondido carrying a bag. Bernal placed the bag on the passenger seat of a car; the bag was retrieved later, and papers from the burglary were discovered inside.

At the time the stolen paperwork was retrieved, Bernal was placed under arrest and, during a patdown search, two baggies with usable amounts of methamphetamine were found on Bernal's person.

PROCEDURAL BACKGROUND

Bernal was charged in an information with resisting an executive officer with force or violence (Pen. Code, § 69), street terrorism (Pen. Code, § 186.22, subd. (a)), receiving stolen property (Pen. Code, § 496, subd. (a)), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), and robbery (Pen. Code, § 211). The information further alleged that Bernal had one prior strike within the meaning of Penal Code sections 667, subdivisions (b)-(i) and 1170, subdivisions (a)-(d) and had served a prior prison term (Pen. Code, § 667.5, subd. (b)). The information also alleged that

5

Bernal had received stolen property and possessed methamphetamine while on bail or his own recognizance. (Pen. Code, § 12022.1, subd. (b).)

A jury found Bernal guilty of all five substantive charges. In a bifurcated proceeding, Bernal admitted the prior strike, prior prison term and on-bail allegations. The trial court sentenced Bernal to a term of 11 years eight months.

DISCUSSION

I

As his first issue on appeal, Bernal raises the contention that his conviction of violating section 69 must be reversed because the People did not present evidence he used force or violence in his attempt to escape arrest. In particular, he argues there was no showing that he used force *against* or *on* Officer Whitaker. We reject Bernal's narrow interpretation of the statute and find ample of evidence of the use of force or violence within the meaning of the statute.[2]

Section 69 states: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by a fine not exceeding ten thousand

---

2      In reviewing an appellant's contention that a judgment of conviction is not supported by sufficient evidence, we are guided by a familiar standard: "'In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value— such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Story* (2009) 45 Cal.4th 1282, 1296.)

dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment."

As the court in *In re Manuel G.* (1997) 16 Cal.4th 805, 814, stated: "The statute sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; *the second is resisting by force or violence an officer in the performance of his or her duty*. [Citation.]" (Italics added.) Here, Bernal was charged with and tried on the theory he was guilty of the second type of offense defined by section 69.

It bears emphasis that under the express terms of the statute, the second type of violation occurs when a defendant "knowingly *resists*, by the use of force or violence, such officer . . . ." Other than forceful resistance, the terms of the statute do not require that a defendant use any other manner of force or violence on the person of the executive officer. We also note the CALCRIM instruction on section 69 instructs juries that they must find that the defendant used "force or violence *to resist* an executive officer." (CALCRIM No. 2652, italics added.) Like the statute, the instruction does not require more than forceful resistance.

The force required for commission of the second type of violation of section 69 is illustrated in the holding in *People v. Carrasco* (2008) 163 Cal.App.4th 978, 982 (*Carrasco*). In *Carrasco*, the defendant appeared at a police station and behaved in a bizarre and threatening manner. The defendant was on a bicycle and had his hand in a duffel bag; this behavior caused one officer, Deputy Raul Macias, to fear for his safety

7

and draw his service revolver. Another police officer, Detective Jim McGuffin, "came from the back of the station and grabbed appellant's waist. Appellant pulled his right hand from the duffle bag and tried to ride away on his bike, but McGuffin forced him to the ground. As Deputy Macias held on to appellant's torso, three other detectives attempted to control his arms. Ten to 15 other officers were present at the scene. Officers told appellant to relax and put his hands behind his back, but he refused. Continuing to struggle, he placed his hands underneath his body while 'yelling, kicking, [and] cussing' and saying he would 'kick [their] ass[es].' Deputy Macias said, 'Stop resisting,' but appellant continued to squirm and refused to give his right hand. Lieutenant Michael Rothans held appellant's shoulders and three or four times told him to relax and place his hands behind his back. Rothans then pepper sprayed appellant." (*Carrasco*, *supra*, 163 Cal.App.4th at p. 982.)

On appeal, Carrasco argued the trial court should have given an instruction on the lesser included offense of resisting a peace officer in the discharge or attempt to discharge any duty within the meaning of section 148, subdivision (a)(1). The court in *Carrasco* agreed that because resisting arrest with force or violence necessarily includes the lesser crime of simply resisting arrest, as set forth in section 148, section 148 is a lesser included offense of the second type of section 69 violation. (*Carrasco*, *supra*, 163 Cal.App.4th at p. 985.) However, the court found that no lesser included offense instruction was required because: "[I]f appellant resisted the officers at all, he did so forcefully, thereby ensuring no reasonable jury could have concluded he violated section

8

148, subdivision (a)(1) but not section 69. The People's witnesses testified appellant was knowingly and unlawfully resisting both Deputy Macias and Detective McGuffin through the use of force or violence. Appellant had to be physically taken to the ground by Detective McGuffin because he refused to comply with Deputy Macias's repeated orders to remove his hand from his duffle bag. Appellant failed to comply with several officers' repeated orders to relax and Macias's orders to 'stop resisting.' He continued to struggle with Macias and McGuffin, as well as several other officers. Macias attempted to control appellant's torso, while three other detectives attempted to control appellant's arms. Appellant placed his hands and arms underneath his body, was 'yelling, kicking, [and] cussing,' and said he would 'kick [the officers'] ass[es].' Appellant continued to squirm and refused to give his right hand to Macias. Appellant did not comply until after Lieutenant Rothans administered the use of pepper spray. There was no contrary evidence disputing the officer's description of the struggle on the floor. Hence, the jury would have had no rational basis to conclude appellant wrestled with the officers, for which they convicted him of resisting or delaying an officer, but the struggle did not involve force or violence; accordingly, the trial court properly instructed the jury by not instructing it with section 148, subdivision (a) as a lesser included offense." (*Carrasco*, *supra*, 163 Cal.App.4th at pp. 985-986.)

The facts considered by the court in *Carrasco*, as well as the court's conclusion those facts required the jury to find that force or violence was used, demonstrate that a violation of section 69 need not involve any force or violence directed toward the person

9

of an executive officer. Rather, as the facts set forth by the court in *Carrasco* illustrate, force used by a defendant *in resisting* an officer's attempt to restrain and arrest the defendant is sufficient to support a conviction. In this regard, given the court's detailed description of the defendant's conduct—which did not involve any force directed at any of the arresting officers—the court's reference to "force or violence" against an officer (*Carrasco*, *supra*, 163 Cal.App.4th at p. 985) plainly includes force or violence used in *resisting* arrest.

We also note that in addition to the holding in *Carrasco*, at least one other court has assumed that section 69 does not require that any force or violence be directed toward an officer. In *People v. Martin* (2005) 133 Cal.App.4th 776, 782-783 (*Martin*), the defendant was convicted of battery on one police officer in violation of section 243, subdivision (c)(2) and resisting arrest by four other officers in violation of section 69. The trial court sentenced the defendant separately for both crimes. On appeal, the defendant argued that because section 69 was not, by its terms, a crime against police officers, it was not a violent crime that could be separately punished under the multiple-victim exception to section 654. In rejecting this argument, the court accepted the proposition that section 69 is not an offense directed "against the person." (*Martin*, *supra*, 133 Cal.App.4th at p. 782.) The court found that, while the statute was designed to protect peace officers from more than just battery, it was nonetheless a violent crime for purposes of applying the multiple-victim exception. "The statutory language specifically provides that the offense is one involving resisting an officer by 'force or

10

violence.' It is designed to protect police officers against violent interference with performance of their duties. [Citation.] While the object of the offense may not be to attack a peace officer, its consequence is frequently to inflict violence on peace officers, or subject them to the risk of violence. . . . . [¶] . . . [¶] Whether the purpose of violence is to inflict harm on the officers or the harm is merely incidental to the goal of facilitating the perpetrator's escape, the consequence is the same; peace officers are subjected to violence and injury. As a result, the multiple-victim exception is applicable here, because appellant committed acts of violence against more than one victim; he resisted arrest by four different officers and battered one of them." (*Martin*, *supra*, 133 Cal.App.4th at pp. 782-783.)

By interpreting section 69 in terms of *the risk of violence* created by any forceful resistance to arrest, rather than in terms of any intent to commit harm, the court in *Martin* implicitly eliminated any requirement that a defendant intend to harm a police officer or direct force or violence toward an officer.

In sum, given the express terms of the statute and the holdings in *Carrasco* and *Martin*, we conclude that forceful resistance of an officer by itself gives rise to a violation of section 69, without proof force was directed toward or used on any officer.

Under this interpretation of the statute, Bernal's forceful attempt to escape from Officer Whitaker plainly violated section 69. The record demonstrates that while Whitaker was holding Bernal's left hand, Bernal pushed against Whitaker and tried to begin running and that while Whitaker was holding on to Bernal's waist, Bernal dragged

11

Whitaker eight to 10 yards down the bike trail, until they both fell violently to the ground. In addition, the record shows that, by swinging his hips first to one side and then to the other, Bernal attempted to free himself from Whitaker's grasp. Contrary to Bernal's contention on appeal, this forceful and violent conduct amply supported his conviction of violating section 69.

## II

Next, Bernal argues the trial court should have sua sponte instructed the jury with respect to the meaning of "force or violence" as that phrase used in section 69. We find no error.

As the Attorney General points out, "[i]n the absence of a specific request, a court is not required to instruct the jury with respect to words or phrases that are commonly understood and not used in a technical or legal sense." (*People v. Navarette* (2003) 30 Cal.4th 458, 503.) "A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning. [Citation.]" (*People v. Estrada* (1995) 11 Cal.4th 568, 574.) Thus, unless it appears that in enacting section 69, the Legislature intended that the phrase "force or violence" have some peculiar meaning that differs from the common understanding of those terms, no sua sponte duty arose. (See *People v. Griffin* (2004) 33 Cal.4th 1015, 1023.)

As the court in *Martin* determined, the purpose of section 69 is to protect law enforcement officers from the risk of harm while they perform their duties, whether that

risk is created intentionally or only as a consequence of other conduct.  (*Martin*, *supra*, 133 Cal.App.4th at pp. 782-783.)  The breadth of that protection suggests that the Legislature intended a broad ordinary meaning of the words it used, as opposed to any narrow technical meaning.  In this regard, it is significant that "[t]he terms 'force' and 'fear' as used in the definition of the crime of robbery have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors."  (*People v. Anderson* (1966) 64 Cal.2d 633, 640.)  Given its broad scope, the same is true with respect to section 69: there is no apparent technical meaning intended, and we must therefore presume the phrase "force or violence" as used in the statute is within the understanding of jurors.

In sum, the trial court was not required to give a sua sponte instruction on the meaning of force or violence.

III

Next, Bernal contends there is insufficient evidence in the record to support his conviction of street terrorism within the meaning of section 186.22, subdivision (a).  We reject this contention as well.

Section 186.22, subdivision (a) states:  "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison

13

for 16 months, or two or three years."

"The substantive offense defined in section 186.22(a) has three elements. Active participation in a criminal street gang, in the sense of participation that is more than nominal or passive, is the first element of the substantive offense defined in section 186.22(a). The second element is 'knowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity,' and the third element is that the person 'willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.'" (*People v. Lamas* (2007) 42 Cal.4th 516, 524.) Expert evidence about the culture and habits of gangs is admissible to prove the elements of the substantive gang crime. (*People v. Williams* (2009) 170 Cal.App.4th 587, 609; *People v. Vang* (2011) 52 Cal.4th 1038, 1044 (*Vang*).)

As the Attorney General notes, Bernal does not contest the jury's implied findings he was a member of a criminal street gang, Westside, or that he actively participated in that gang. Rather, Bernal argues the People's theory with respect to the third element, that Bernal promoted, furthered, or assisted in felonious conduct by another member of the gang, Lopez, when on October 13 Lopez was in possession of a concealed weapon, is unsupported by evidence in the record. Bernal contends there was no proof he knew Lopez was carrying a weapon and therefore no basis upon which to find that he was assisting Lopez in committing the crime of carrying a concealed weapon.

In rejecting this contention, the trial court stated: "I don't think technically the People even have to have expert testimony as to whether or not when individuals go into

14

a situation armed, expecting potential conflict and violence, it's in everyone's best interest to know who's armed and who is armed with what."  The People did, of course, present expert testimony from a police detective who, in response to a hypothetical which set forth in detail the circumstances of the October 13 arrest, agreed that each of the three gang members would know the others were armed.

Given the circumstances the officers encountered when they saw Bernal, Lopez and the juvenile on the bike path—gang members in a rival gang's territory, armed and one of whom had a can of spray paint—the expert's testimony that someone in Bernal's position would know that Lopez was armed was corroboration of the inference that otherwise arose from the circumstantial evidence.  This is not an instance where the only evidence supporting an inference that a crime was gang related was an expert's opinion to that effect.  (See *People v. Ramon* (2009) 175 Cal.App.4th 843, 851 (*Ramon*); *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1195-1199 (*Frank S.*).)  As the courts in *Ramon* and *Frank S.* held, more than an expert opinion is required to establish that a crime is gang related.  However, here, as required by the court in *Frank S.*, *supra*, 141 Cal.App.4th at page 1199, in addition to expert opinion, the prosecution *did* present circumstantial evidence Bernal "was in gang territory, had gang members with him, [and] had . . . reason to expect" the use of a weapon in a gang-related offense.  The circumstantial evidence, supported by the expert's opinion, was more than sufficient to support a finding as to Bernal's knowledge.

In sum, the record here amply supports the prosecution theory that Bernal, Lopez

15

and the juvenile were very deliberately armed because they were going to be tagging in Diablos territory and, for their collective protection, each knew the others were armed.

IV

Lastly, Bernal contends the prosecutor was guilty of four acts of misconduct that either singly or collectively require reversal of his convictions. We find no misconduct warranting any disturbance of the trial court's judgment.

A. *Applicable Law*

"'Improper remarks by a prosecutor can "'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" [Citations.]' [Citation.] 'But conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves "'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."'" [Citations.] 'To preserve for appeal a claim of prosecutorial misconduct, the defense must make a timely objection at trial and request an admonition; otherwise, the point is reviewable only if an admonition would not have cured the harm caused by the misconduct.' [Citations.]" (*People v. Earp* (1999) 20 Cal.4th 826, 858.) Moreover, even if we determine that with respect to any misconduct an objection and admonition would not have cured the harm, reversal is required only if "'on the whole record the harm resulted in a miscarriage of justice . . . .'" (*People v. Bell* (1989) 49 Cal.3d 502, 535.)

B. *Display of "WSG X3"*

In searching Bernal's residence, law enforcement officers discovered a number of

photographs and an envelope. One of the photographs and one of the envelopes contained lettering that reads "WSG X3." At a pretrial hearing, defense counsel asked the court to order that photographs or other evidence referring to "X3" be excluded. Counsel explained that "X3" is a common reference to the Mexican Mafia, a prison gang. Counsel argued that Bernal's affiliation with the Mexican Mafia was not relevant to any issue in the case, and the prosecutor agreed there was no contention the Mexican Mafia was involved with any of the predicate offenses. The trial court granted defense counsel's motion and ordered that references to "X3" and the Mexican Mafia be excluded as cumulative.

During his opening statement, the prosecutor briefly presented, in a Power Point presentation, a compilation of the photographs recovered from Bernal's residence. The compilation included the photograph with the "X3" lettering. Defense counsel asked for a sidebar; in response, the trial court asked the prosecutor take the compilation off the Power Point screen. The prosecutor immediately complied.

Following the parties' opening statements, the trial court indicated that, given the short period of time the jury was exposed to the Mexican Mafia reference and the rather oblique manner in which the exposure occurred in one photograph in a larger compilation of photographs, no prejudice occurred. Defense counsel agreed and stated: "[J]ust for the record, it came up briefly. I objected once I saw it, and I believe that the remedy was taking it down. I don't think there's any highlight in the manner in which it was done."

Although the prosecutor clearly erred in displaying the composite photograph that

17

included the offending "X3" reference, there is no contention that he did so intentionally. He in fact apologized for the error. More importantly, in light of the brief and oblique manner in which the material was presented, there was no likelihood Bernal was prejudiced. This record is in marked contrast to the repeated and irrelevant gang references, including references to the Mexican Mafia, that occurred in *People v. Albarran* (2007) 149 Cal.App.4th 214, 227-228.

C. *Expert Examination*

Next, Bernal contends the prosecutor elicited an improper opinion from the expert with respect to whether Bernal knew Lopez was carrying a concealed weapon. We find no misconduct.

In the form of a hypothetical question, which set forth in detail the circumstances that Officers Whitaker and Duong confronted on the bike path on October 13, the prosecutor asked the expert whether the hypothetical gang member carrying an axe would have known that his hypothetical confederate was carrying a knife. The expert responded affirmatively. This form of questioning has been expressly approved by the Supreme Court. (See *Vang*, *supra*, 52 Cal.4th at pp. 1047-1050; *People v. Gonzalez* (2006) 38 Cal.4th 932, 946.) The use of hypotheticals, as opposed to a direct opinion, is proper because it preserves for the jury determination of whether the underlying facts are true and whether the expert's opinion based on those facts is valid. (*Vang*, at pp. 1047-1050.) Contrary to Bernal's contention, the prosecutor acted properly in questioning the expert in this manner.

We recognize that before asking the hypothetical with respect to Bernal's knowledge, earlier the prosecutor asked the expert a number of hypothetical questions, to which Bernal objected, and which objections were sustained. Because Bernal's objections to the questions were sustained, there is no basis to find that Bernal was prejudiced. (See *People v. Tate* (2010) 49 Cal.4th 635, 692.)

D. *Presumption of Innocence*

During his closing argument, the prosecutor stated: "[A]lso keep in mind that the presumption of innocence lasted in this trial up until the point that Officer Whitaker was on the stand and said, The Defendant is one of the three I saw." After an objection by counsel and a mild admonishment by the trial court, the prosecutor stated: "The Defendant is presumed innocent. Evidence has been presented, I argue to you, that shows beyond a reasonable doubt that he's not." Section 1096 states in pertinent part: "A defendant in a criminal action is presumed to be innocent until the contrary is proved . . . ." The jury here was instructed with CALCRIM No. 220, which provides in pertinent part: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt."

The court in *People v. Goldberg* (1984) 161 Cal.App.3d 170, 189-190 (*Goldberg*) confronted a record that contained an argument similar to the one presented here, to wit: that the defendant was presumed guilty only until proof rebutting the presumption was presented rather than until the jury itself determined the presumption had been rebutted.

19

The court in *Goldberg* noted that the former formulation—presumption exists until evidence overcomes it—is consistent with section 1096 and that the latter formulation—presumption lasts until a jury unanimously determines it has been overcome—is supported by the holding in *People v. Wah Hing* (1911) 15 Cal.App. 195, 199-200. (*Goldberg*, at p. 189.)

The court in *Goldberg* found that, as a practical matter, there is no difference between the two versions of the presumption. (*Goldberg*, *supra*, 161 Cal.App.3d at pp. 189-190.) "Once an otherwise properly instructed jury is told that the presumption of innocence obtains until guilt is proven, it is obvious that the jury cannot find the defendant guilty until and unless *they*, as the fact-finding body, conclude guilt was proven beyond a reasonable doubt. Since such a conclusion cannot be reached prior to deliberation and unanimous agreement, [the two versions] are essentially equivalent in effectively preserving the presumption up and until unanimous agreement is reached." (*Id.* at p. 190.)

Here, the prosecutor's initial remarks, although consistent with section 1096, did not meet the standard required under *Wah Hing*. His later, modified remarks are plainly consistent with both section 1096 and *Wah Hing*. In light of the fact that the jury was properly instructed with CALCRIM No. 220, Bernal was in no sense prejudiced by the prosecutor's statements about the presumption of innocence. (See *Goldberg*, *supra*, 161 Cal.App.3d at p. 190.)

20

E.  *Force*

In his argument, the prosecutor also stated with respect to resisting arrest with force:  "[W]hen you ask the question, [w]as there force?  It's physical.  That's what it means.  Was the resistance physical in some way?"  On appeal, Bernal argues that this was inaccurate because he believes a violation of section 69 requires that force be applied against the body of an executive officer.  As we have previously explained, section 69 does not require such a use of force but, as suggested in the prosecutor's argument, only requires proof that force was used in resisting a lawful arrest.  Hence, the prosecutor's argument was proper.

F.  *Cumulative*

Because we have only found error in the prosecutor's inadvertent display of "X3" to the jury, and that error was not prejudicial, there is no basis upon which we can find that cumulative error requires reversal.

## DISPOSITION

The judgment of conviction is affirmed.


BENKE, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.


21