Filed 8/2/21  P. v. A.B. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.B.,<br><br>    Defendant and Appellant. | 2d Crim. No. B304819<br>(Super. Ct. No. YJ39981)<br>(Los Angeles County) |

The juvenile court found true allegations that, between 2015 and 2018, A.B. forcibly raped N.B. when she was under 14 years old (Pen. Code,[1] § 261, subd. (a)(2)), forcibly sodomized her when she was under 14 (§ 286, subd. (c)(2)(B)), and continuously sexually abused her (§ 288.5, subd. (a)).  The court also found true allegations that, during the same period, A.B. forcibly raped K.J. when she was under 14 and that he continuously sexually abused her.  It declared A.B. a ward of the

---

[1] Unlabeled statutory references are to the Penal Code.

court, and ordered him placed at home on probation. The court calculated his maximum term of confinement to be 31 years.

A.B. contends: (1) there was insufficient evidence that he forcibly sodomized N.B., (2) there was insufficient evidence that he forcibly raped K.J., (3) the juvenile court erred in finding that he committed both discrete and continuous sexual offenses during the same time period, and (4) his maximum term of confinement should be stricken. We strike the maximum term of confinement, and otherwise affirm.

FACTUAL AND PROCEDURAL HISTORY

*A.B., his victims, and their family*

A.B. and his sister, An.B., were born in 2001 and 2003, respectively. Their mother was in a relationship with another woman with two daughters, N.B. (born in 2005) and K.J. (born in 2007). The six of them shared a house together. Initially, An.B., N.B., and K.J. shared one bedroom, their mothers shared another, and A.B. had his own. When N.B. was in sixth grade, A.B. and An.B. switched bedrooms so that A.B. shared a room with N.B. and K.J. while An.B. had her own.

*A.B. sexually abuses N.B.*

When N.B. was in fourth or fifth grade, A.B. began to enter her bedroom at night and molest her. The first time N.B. awoke to A.B. squeezing her breasts. He left when An.B. asked him what he was doing in their room. N.B. did not tell anyone what had happened.

A few months later, A.B. touched N.B.'s breasts or buttocks. Another time N.B. awoke when A.B. took off her shorts, turned her over, and touched her buttocks. N.B. again did not tell anyone.

2

A.B. repeatedly touched the area around N.B.'s vagina. Sometimes he took off her clothes, while other times he put his hands down her pants.

A.B.'s molestations subsided when N.B.'s mother checked the girls' bedroom more frequently. They resumed when he moved into the bedroom with N.B. and K.J. Twice A.B. grabbed N.B.'s wrist and forced her to touch his erect penis. Several times each week he penetrated her vagina with his fingers. N.B. was too scared to do anything because she feared A.B.

A.B. once put his penis inside N.B.'s anus and moved it from side to side, making the bed shake and causing N.B. to feel pressure and pain.[2] He stopped only when An.B. entered the room and told him to leave. He later sodomized N.B. on at least three more occasions. He sometimes made threats as he did so.

When N.B. was in sixth or seventh grade, A.B. raped her. Once, when N.B. was asleep on the floor, she awoke to A.B. pulling down her pants and then lying on top of her as he forced his penis into her vagina. She could not move due to A.B.'s bodyweight. He subsequently raped her several more times.

A.B. orally copulated N.B. when she was in middle school. After K.J. witnessed one of these incidents, A.B. told her that he would give her something if she did not tell anyone. N.B. later told An.B. what had happened, who in turn told A.B. that she would tell their mother if it happened again.

---

[2] When asked whether A.B.'s penis touched her buttocks or "where we poo from," N.B. said that "[i]t was in between where we—in be—the butt cheeks." She also said that "it hurted because—he was pushing hard" and that his penis felt "wet."

At some point N.B. told An.B. that A.B. had touched her.  Around the same time N.B. asked K.J. if A.B. had ever touched her.  K.J. said that she did not know.

A.B. stopped molesting N.B. in 2018.  In December of that year N.B., K.J., and their mother moved out of the house.  N.B. later told a friend what A.B. had done to her.

*A.B. sexually abuses K.J.*

A.B. began molesting K.J. when she was in fourth grade.  K.J. recalled awakening to A.B. touching her buttocks.  He touched her buttocks on several more occasions over the next two years.  The touching continued when he moved into her room.

During the same period, A.B. took K.J.'s hand and put it on his penis.  K.J. moved her hand away, but A.B. grabbed her with a tighter grip.  After K.J. stood up, A.B. put a blanket over himself.  K.J. then left the room.

Sometimes A.B. touched K.J.'s vaginal area.  Once when she was lying in bed she awoke to A.B. touching the area.  She moved away from him and pulled a blanket over herself.  A.B. also touched K.J.'s buttocks with his penis, but did not penetrate her anus.

When she was in fifth grade, K.J. woke up feeling pain in her vaginal area.  Her shorts and underwear were pulled down to her knees.  A.B. was behind her, touching her with his penis.  K.J. kicked A.B. in the face and moved away.

A.B. stopped molesting K.J. when she was in sixth grade, a few months before she moved out of the house with N.B. and their mother.  K.J. told N.B. that A.B. was molesting her, but they never discussed the abuse in detail.  She also told a friend that she had been raped, but did not identify A.B. as her rapist.

4

*N.B. and K.J. report the abuse*

In February 2019, K.J. wrote a note to a friend that said, "I got raped." A school counselor saw the note and asked K.J. if she knew what rape was. She said that she did. He then asked if she had been raped. K.J. did not want the counselor to know, so she said she had not.

K.J.'s mother and N.B. went to the counselor's office. K.J.'s mother asked K.J. if she had been raped, but K.J. did not want her to know so she again said no. K.J.'s mother then had everyone leave the office, and K.J. told her she had been raped by A.B. She also said that A.B. had touched N.B., which N.B. later confirmed. The three then left the counselor's office and went to the police station, where N.B. and K.J. told police details about the molestations.

The following month, a nurse practitioner examined N.B. and K.J. The practitioner found no evidence of injury to N.B., but because she had begun menstruating several years earlier she could have been abused as she described without showing residual signs of injury. K.J. similarly showed no signs of injury, but she, too, had begun menstruating.

*The jurisdictional hearing*

Prosecutors alleged that A.B. forcibly raped N.B. when she was under 14 years old, forcibly sodomized her when she was under 14, and continuously sexually abused her. They also alleged that A.B. forcibly raped K.J. when she was under 14 and that he continuously sexually abused her. All of the offenses allegedly occurred between January 1, 2015, and December 31, 2018.

At the jurisdictional hearing N.B. testified A.B. touched her "butt" with his penis when she was in middle school.

The prosecutor asked N.B. which area of her buttocks A.B. had touched, but N.B. did not understand the question. The prosecutor clarified: "Was it on the outside skin of your butt, or was it the area where you poo from?" N.B. replied, "It was the area where I poop from."

N.B. also said that she felt A.B.'s penis when he pulled down her pants. The prosecutor asked where she felt his penis. N.B. replied, "In my butt." The prosecutor again asked if that was where N.B. "poo[ed] from." N.B. said that it was.

The discussion continued:

> "[Prosecutor]:     When you were talking about the pressure, do you know what was causing the pressure? Do you know what an anus is, the area that you poo from, did you notice what was causing the pressure? Did you feel something?
>
> "[N.B.]:     Yes.
>
> "[Prosecutor]:     What is it that you felt in that area?
>
> "[N.B.]:     His—[A.B.]'s penis.
>
> "[Prosecutor]:     Did you feel it going—you said there was movement, or was there movement?
>
> "[N.B.]:     Yes, there was.

"[Prosecutor]:      And did you feel that movement?

"[N.B.]:            Yes.

"[Prosecutor]:      The area that you felt that movement was the area that you poo from?

"[N.B.]:            Yes."

Later, when N.B. was testifying about A.B.'s threats, the prosecutor asked, "So when he did that act of inserting his penis into the area where you poo from, you had already, in your mind, heard him make statements that you understood in that time period as threats?" N.B. said, "Yes."

On cross-examination, defense counsel asked, "And today, you said that you felt [A.B.'s penis] go inside the area that we called the area that you poo from. Do you remember that?" N.B. said that she did. Defense counsel then clarified: "And you said it went inside, right?" N.B. replied, "Yes."

A retired obstetrician opined that the forensic exam indicated that N.B.'s hymen had not been penetrated. He also said that it was likely that she would show signs of injury given when the abuse allegedly started. But he also admitted that her lack of injuries was consistent with the abuse she alleged.

As to K.J., the obstetrician opined that there would have been evidence of trauma to her hymen had she been vaginally penetrated. If only the outer lips of her vagina had been penetrated, however, she could have experienced the pain she described without residual signs of injury.

7

At the conclusion of the hearing, the juvenile court found the allegations against A.B. true, and declared him a ward of the court.  It ordered him placed at home on probation, with a maximum period of confinement of 31 years.

DISCUSSION

*Forcible sodomy*

A.B. first contends we should reverse the juvenile court's finding that he forcibly sodomized N.B. because her statements and testimony about whether his penis entered her anus were not sufficiently specific.  We disagree.

Sodomy is "sexual conduct consisting of contact between the penis of one person and the anus of another person." (§ 286.)  "Any sexual penetration, however slight, is sufficient to complete the crime of sodomy." (*Ibid.*)  But the penetration must be of at least the perianal area; penetration of the space between the buttocks is insufficient.  (*People v. Paz* (2017) 10 Cal.App.5th 1023, 1038.)  Penetration of the anal canal is not required, however.  (*Ibid.*)

We review the juvenile court's finding that A.B. committed sodomy using the same standards we use to assess the sufficiency of the evidence to support an adult criminal conviction.  (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.)  Specifically, the evidence is sufficient if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  While we must ensure the evidence supporting the juvenile court's finding is reasonable, credible, and of solid value, we will not reweigh evidence, reappraise the credibility of witnesses, or resolve conflicts in the evidence.  (*Ochoa*, at p. 1206.)  Reversal is

8

permitted only if "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [that finding].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

N.B.'s testimony was sufficiently specific to uphold the juvenile court's finding that A.B. committed forcible sodomy. At the jurisdictional hearing N.B. testified that A.B.'s penis was in "the area where I poop from." She said that she felt his penis "in [her] butt," where she "poo[ed] from." She said that his penis caused pressure inside her anus. And she clarified to defense counsel that A.B.'s penis was "*inside* the area that [she] poo[s] from." (Italics added.)

The juvenile court credited N.B.'s testimony over her prior statement to investigators when it determined that A.B.'s penis entered N.B.'s perianal area and/or anal canal. That determination is binding on this court. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) And it provides substantial evidence that A.B. committed sodomy. (*People v. Hart* (1999) 20 Cal.4th 546, 611.) A.B.'s speculation to the contrary—that N.B. could have meant that his penis only penetrated her buttocks—was an argument to be made to the court below, not on appeal. (*People v. Young* (2005) 34 Cal.4th 1149, 1181 [appellate court does not resolve evidentiary conflicts].) Reversal is unwarranted. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27 [reversal not warranted "simply because the circumstances might also reasonably be reconciled with a contrary finding"].)

*Forcible rape*

A.B. next contends there was insufficient evidence to support the juvenile court's finding that he used force or duress to rape K.J. We again disagree.

9

Forcible rape may be accomplished by force, violence, duress, menace, or fear of immediate and unlawful bodily injury. (§ 261, subd. (a)(2).) To find that a rape was accomplished by force, the trier of fact must conclude only that "the use of force served to overcome the will of the victim to thwart or resist the attack," not that it "physically facilitated sexual penetration or prevented the victim from physically resisting her attacker." (*People v. Griffin* (2004) 33 Cal.4th 1015, 1027 (*Griffin*).) But the amount of force used need not be "'substantially different from or substantially greater than' the physical force normally inherent in an act of consensual sexual intercourse." (*Id*. at p. 1023, italics omitted.) And the victim need not resist, nor be prevented from resisting, for force to be found. (*Id*. at p. 1028.)

"Duress" means "'a direct or implied threat of force, violence, danger, hardship[,] or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed, or (2) acquiesce in an act to which one otherwise would not have submitted.' [Citation.]"[3] (*People v. Leal* (2004) 33 Cal.4th 999, 1004.) In determining whether a rape was accomplished by duress, the trier of fact must consider the totality of the circumstances, including the victim's age and relationship to the defendant, the defendant's position of dominance over the victim, and the defendant's continuous exploitation of the victim. (*People*

---

[3] In in his reply brief A.B. asserts that we cannot uphold the finding that he forcibly raped K.J. based on a theory of duress because prosecutors did not argue that theory in the proceedings below. He is wrong: Prosecutors repeatedly referenced duress in their arguments, and the juvenile court cited those arguments when making its findings.

*v. Barton* (2020) 56 Cal.App.5th 496, 518.) "Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family." (*People v. Cochran* (2002) 103 Cal.App.4th 8, 14 (*Cochran*), disapproved on another ground in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12.) "[A]s a factual matter," when the victim is young and is molested by an older family member in the family home, "in all but the rarest cases duress will be present." (*Cochran*, at p. 16, fn. 6.)

Substantial evidence supports the juvenile court's finding that A.B. raped K.J. using force or duress. When she was in fifth grade, K.J. awoke feeling pain in her vagina. Her shorts and underwear had been pulled down to her knees. To stop the rape, K.J. had to kick A.B. in the face and move away from him. Based on this evidence the juvenile court could reasonably conclude that A.B. overcame K.J.'s will by force. (See *In re Asencio* (2008) 166 Cal.App.4th 1195, 1205-1206 [pulling down child's underwear and rolling onto her was sufficient evidence of force].)

A.B. cites *People v. Jimenez* (2019) 35 Cal.App.5th 373 as support for his contention that the force used must be substantially different from or greater than that necessary to accomplish the underlying rape. But *Jimenez* discusses the standards for committing lewd acts by force. (*Id.* at p. 391.) The standard for committing forcible rape is different: It must simply be sufficient to overcome the will of the victim. (*Griffin, supra*, 33 Cal.4th at pp. 1026-1028.) K.J.'s testimony that A.B. pulled down her shorts and underwear and then put his penis inside her meets that standard.

11

A.B.'s citation to *In re John Z.* (2003) 29 Cal.4th 756 is similarly misplaced. In *John Z.*, our Supreme Court had to determine "whether the crime of forcible rape . . . is committed if the female victim consents to an initial penetration by her male companion, and then withdraws her consent during an act of intercourse, but the male continues against her will." (*Id.* at pp. 757-758.) There was no evidence that K.J. initially consented to intercourse with A.B. and then withdrew that consent.

The totality of the circumstances also provides substantial evidence that A.B. used duress to rape K.J. K.J. was just nine or 10 years old when the rape occurred, and had lived in the same house as A.B. for her entire life. A.B. was 15 or 16, and physically larger than her. He molested K.J. for some time prior to the rape, beginning each instance when she was asleep. K.J. thus felt afraid and unsafe in her home, especially when she was sleeping. Considered together, these circumstances provide substantial evidence to support the finding that A.B. employed duress to rape K.J. (*Cochran, supra,* 103 Cal.App.4th at p. 14.)

*Discrete and continuous offenses*

A.B. contends the juvenile court's true findings on the continuous sexual abuse allegations must be vacated because both those offenses and the discrete offenses found true by the court—the forcible rapes and forcible sodomy—occurred between January 2015 and December 2018. (See *People v. Johnson* (2002) 28 Cal.4th 240, 245, 248 [convictions for both continuous sexual abuse and discrete sexual offenses that occur during same time period are prohibited].) But A.B. did not demur to the Welfare and Institutions Code section 602 petition based on the overlapping time periods of the continuous and discrete offenses.

12

His contention is therefore forfeited. (*People v. Goldman* (2014) 225 Cal.App.4th 950, 956-957.)

*Maximum term of confinement*

Finally, A.B. contends, and the Attorney General concedes, that the juvenile court erred when it calculated his maximum term of confinement. We agree. (*In re G.C.* (2020) 8 Cal.5th 1119, 1129 [juvenile court cannot specify maximum term of confinement when minor is not removed from physical custody of parents].) The calculated term has no legal effect (*In re Ali A.* (2006) 139 Cal.App.4th 569, 574) and must be stricken (*In re A.C.* (2014) 224 Cal.App.4th 590, 592).

DISPOSITION

The juvenile court is directed to strike the maximum term of confinement from the disposition order entered January 14, 2020. In all other respects, the order is affirmed.

NOT TO BE PUBLISHED.

TANGEMAN, J.

We concur:

YEGAN, Acting P. J.

PERREN, J.

13

Irma J. Brown, Judge

Superior Court County of Los Angeles

_____

Elana Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, William H. Shin and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.