Filed 9/18/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062071 |
| v. | (Super. Ct. No. 08NF4115) |
| JARRELL KELLY, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Cheri T. Pham, Judge. Reversed and remanded with directions.

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, Felicity Senoski and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

Convicted of felony murder and attempted murder in 2012, Jarrell Kelly appeals the summary denial of his petition for resentencing under Penal Code section 1172.6.[1] His appeal requires us to interpret the actus reus requirement for felony murder as set forth in section 189, subdivision (e)(2) (section 189(e)(2).) In particular, we must ascertain what it means to "assist[] the actual killer in the commission of murder in the first degree" for purposes of that provision. In our original opinion in this case, we interpreted that phrase to require proof the defendant assisted the actual killer in committing the murderous act, and since the record of appellant's conviction does not contain such proof, we reversed the trial court's ruling and ordered the court to conduct an evidentiary hearing on appellant's entitlement to resentencing. (*People v. Kelly* (Mar. 14, 2024, G062071) [nonpub. opn.].)

However, shortly after we issued our opinion, another panel of this court rendered a split decision in *People v. Morris* (2024) 100 Cal.App.5th 1016 (*Morris*) that conflicts with how we interpreted section 189(e)(2). Whereas we interpreted that provision as requiring proof the defendant assisted the killer in committing the murderous act, the majority in *Morris*

---

[1] That section was formerly housed in Penal Code section 1170.95, but in 2022 it was renumbered without substantive change as Penal Code section 1172.6. (Stats. 2022, ch. 58, § 10.) For ease of reference, we will refer to the current statute. All further statutory references are to the Penal Code.

decided it simply requires proof the defendant assisted the killer in committing the underlying felony. (*Id*. at p. 1020.)[2]

The California Supreme Court granted review in *Morris* on July 17, 2024 (S284751), and therefore it will have the final word on the meaning of section 189(e)(2)'s actus reus requirement. In the meantime, we ordered a rehearing in this case and have obtained supplemental briefing from the parties on the *Morris* decision. Consistent with our original opinion, we interpret section 189(e)(2) to mean the defendant must assist the killer in committing the murderous act, not just the underlying felony. Because the record of appellant's conviction does not conclusively establish that requirement, we reverse the trial court's denial order and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

In 2006, appellant and several other members of the Rollin' 20's gang robbed two men at gunpoint in the restroom of a Denny's restaurant in Anaheim. During the robbery, Armand Jones, a friend of the victims, entered the restroom. Appellant's group tried to rob him too, but he resisted and chased the robbers outside. Jones' friend Ronnell Spencer joined the chase and fired several shots at the robbers in the parking lot. Appellant's group returned fire, wounding Spencer and killing Jones.

Appellant was charged with murder, attempted murder, robbery and street terrorism, as well as vicariously discharging a firearm. (§§ 187, subd. (a), 664, 211, 186.22, subd. (a), 12022.53, subds. (c), (d) & (e)(1).) He

---

[2] Recently, another panel of this court sided with the *Morris* majority in *People v. Lopez* (Aug. 27, 2024, G061870) __ Cal.App.5th __ [2024 Cal.App.LEXIS 527].

3

also faced two special circumstances allegations, namely that Jones was killed during a robbery and to further the activities of a criminal street gang. (§ 190.2, subds. (a)(17)(A) & (a)(22).)

At trial, the prosecutor conceded appellant did not shoot Spencer or Jones. However, he argued appellant was guilty of first degree felony murder for participating in the robbery that led to the fatal shooting. And he argued appellant was guilty of attempted murder because that offense was a natural and probable consequence of the robbery or a conspiracy to commit robbery.

With respect to the gang special circumstances allegation, the jury was instructed it not only required proof that appellant was a member of a criminal street gang when Jones was killed, but also that he personally intended to kill at that time. (CALCRIM No. 736.) The jury convicted appellant as charged, finding all sentencing and special circumstances allegations true. The trial court sentenced him to life in prison without parole, and we affirmed his convictions on appeal. (*People v. Valerio et al.* (Dec. 24, 2014, G047217) [nonpub. opn.].)

In 2022, appellant petitioned for resentencing under section 1172.6. Based on the jury's true finding on the gang special circumstances allegation, the trial court ruled appellant was ineligible for relief because he acted with the intent to kill. It thus denied his petition without an evidentiary hearing.

DISCUSSION

Appellant contends the trial court's ruling was erroneous because the record of conviction does not render him ineligible for resentencing as a matter of law. We agree.

4

Appellant's claim is grounded in Senate Bill No. 1437. (Stats. 2018, ch. 1015, §§ 2-4 (Senate Bill 1437).) That law narrowed the scope of vicarious liability for the crime of murder in two important ways. First, it eliminated the natural and probable consequences theory in murder cases by providing that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Second, Senate Bill 1437 reined in the felony murder rule so that it can only be applied to nonkillers if they assisted the actual killer in committing first degree murder, or they were a major participant in the underlying felony and acted recklessly indifferent to human life. (§ 189, subd. (e).)

Senate Bill 1437 also led to the enactment of section 1172.6, which is the procedural mechanism for challenging a murder conviction based on vicarious liability. To obtain relief under that section, the defendant must show 1) he was prosecuted for murder on a theory under which malice was imputed to him based solely on his participation in a crime, 2) he was convicted of murder, and 3) and he would not be liable for murder today because of how Senate Bill 1437 redefined that offense. (§ 1172.6, subd. (a).) The statute applies in an analogous manner to defendants who were convicted of attempted murder based on the natural and probable consequences doctrine. (*Ibid.*)

If the defendant makes a prima facie showing for relief, the trial court is required to issue an order to show cause and conduct an evidentiary hearing. (§ 1172.6, subds. (c), (d).) At the hearing, the prosecution must prove beyond a reasonable doubt that the defendant is ineligible for resentencing because his conduct did in fact rise to the level of murder or attempted murder as redefined by Senate Bill 1437. (*Id.*, subd. (d)(3).) Otherwise, the

5

defendant is entitled to vacatur and resentencing per the terms of section 1172.6.

In *People v. Lewis* (2021) 11 Cal.5th 952, our Supreme Court ruled the bar for establishing a prima facie case for resentencing is very low, and the trial court's role in determining whether that bar has been cleared in a given case is quite limited. (*Id.* at pp. 970-972.) While the trial court may consider the underlying record of conviction, judicial factfinding is not allowed. (*Ibid.*) Unless the record of conviction conclusively establishes the defendant is ineligible for resentencing as a matter of law, the court must issue an order to show cause and conduct an evidentiary hearing on his entitlement to relief. (*Id.* at p. 971, accord, *People v. Strong* (2022) 13 Cal.5th 698, 708.)

The Supreme Court's decision in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*) provides further guidance on the resentencing process. As relevant here, the court held a jury's finding the defendant acted with the intent to kill does not foreclose resentencing under section 1172.6. (*Id.* at pp. 460-463.) Rather, the record of conviction must establish the jury made all of the findings necessary to support a conviction for murder or attempted murder under current law. (*Id.* at pp. 463-471.) This requires proof the jury found the defendant harbored the necessary intent *and* he committed the necessary act or acts to be guilty under a presently valid theory of liability. (*Ibid.*)

With respect to appellant's conviction for attempted murder, it is undisputed the jury did not make such findings. As to that offense, the jury was instructed on both direct aiding and abetting and the natural and probable consequences theory of aiding and abetting. Although direct aiding

6

and abetting is still a valid theory of liability, and the jury found appellant acted with the intent to kill, the Attorney General concedes that, under *Curiel*, that finding is insufficient to establish that the jury made the necessary findings to convict appellant of attempted murder as a direct aider and abettor. (*Curiel, supra,* 15 Cal.5th at pp. 460-463.) Therefore, the trial court erred in summarily denying appellant's petition for resentencing as to that offense.

Turning to appellant's murder conviction, the record shows he was convicted based on the felony murder rule. Consistent with the law that was in effect at the time of appellant's trial, the jury was instructed it could convict appellant under that rule so long as he committed or aided and abetted the underlying robbery, and Jones was killed during the commission of that offense. (CALCRIM No. 540B.) The jury was not required to find appellant possessed any particular intent with respect to the killing itself. (See generally *People v. Chun* (2009) 45 Cal.4th 1172, 1184 [under the traditional felony murder rule, malice for the killing was imputed to the defendant so long as he intended to commit and participated in a qualifying felony].)

However, as noted above, Senate Bill 1437 narrowed the scope of the felony murder rule. As set forth in section 189, subdivision (e), the rule currently states, "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [including robbery] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder

7

in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." So, unless the jury made the necessary findings to convict appellant under one of these three theories, he is not barred from obtaining relief under section 1172.6. (*Curiel, supra,* 15 Cal.5th at pp. 463-471.)

The Attorney General admits that for purposes of subdivisions (e)(1) and (e)(3) of section 189, the jury did not find appellant was the actual killer or that he was a major participant who acted recklessly indifferent to human life. Therefore, appellant is not ineligible for resentencing by virtue of those subdivisions. That leaves section 189(e)(2) as the only possible basis for disqualifying him.

We know from its true finding on the gang special circumstances allegation that the jury found appellant acted with the intent to kill, which satisfies the mens rea requirement under section 189(e)(2). That being the case, appellant's eligibility for resentencing on the murder count turns on whether the jury also found he "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." (§ 189(e)(2).)

There is no finding to that effect in the record of appellant's conviction. Nevertheless, the Attorney General argues appellant is still ineligible for resentencing because even though the jury did not find that he assisted the actual killer in shooting Jones, it did find that he was involved in the underlying robbery. In so arguing, the Attorney General effectively equates the actus reus for the new felony murder rule with the actus reus for the old felony rule. He would have us hold that although section 189(e)(2)

8

specifically states the defendant must assist "the actual killer in the commission of murder in the first degree" to be liable for felony murder, the defendant really only needs to assist the actual killer in committing the underlying felony.

This court's decision in *Morris* supports that position. In that case, over a dissent by Justice Moore, the majority ruled, "A person who, with an intent to kill, directly commits or aids and abets an enumerated felony in which a death occurs commits the actus reus necessary for felony murder under the amended felony murder statute by acting in furtherance of the common design of the felony. [Citation.]" (*Morris, supra*, 100 Cal.App.5th at p. 1020; accord, *People v. Lopez* (2023) 88 Cal.App.5th 566 [holding likewise in a similarly split decision].) The Attorney General urges us to reach the same conclusion here. However, for the reasons explained below, we decline to do so.

""As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose." [Citation.] "We begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the entire substance of the statutes in order to determine their scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statutes' nature and obvious purposes. [Citation.] We must harmonize the various parts of the enactments by considering them in the context of the statutory [framework] as a whole. [Citation.]"" (*People v. Lipscomb* (2022) 87 Cal.App.5th 9, 17.)

By its terms, section 189(e)(2) speaks to the situation where the defendant intends to kill but is not the actual killer. In that scenario, the statute says the defendant must assist the killer *in the commission of murder in the first degree* to be liable for felony murder. It does not say the defendant need only assist the killer *in the commission of the underlying felony*. Yet, because first degree murder includes felony murder, the majority in *Morris* determined that assisting the killer in the underlying felony will suffice to satisfy the actus reus of section 189(e)(2). (*Morris, supra*, 100 Cal.App.5th at pp. 1025-1026.)

We believe that, looking at section 189 as a whole, it is clear the Legislature intended to draw a distinction between assisting first degree murder and assisting the underlying felony. That becomes apparent when we contrast the language of section 189(e)(2) with the language of section 189, subdivision (e)(3), which applies when the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life[.]" (§ 189, subd. (e)(3) (section 189(e)(3)).)

Whereas the actus reus requirement of section 189(e)(3) is phrased in terms of participation in the "underlying felony," section 189(e)(2) speaks of assisting the commission of "murder in the first degree." The use of different wording to convey the actus reus requirements for these subdivisions is significant. Indeed, the law is well established that when "the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning." (*People v. Trevino* (2001) 26 Cal.4th 237, 242.)

10

Comparing subdivisions (e)(2) and (e)(3) of section 189 side by side, it is reasonable to conclude the Legislature was aware of and intended to draw a distinction between mere involvement in the underling felony and involvement in the murder itself. Yet, under the *Morris* majority's interpretation of the statute, the use of different terminology in these provisions carries no legal significance. We cannot subscribe to an interpretation of section 189, subdivision (e) that treats materially different terms as if they meant the same thing.

By interpreting section 189(e)(2) to merely require assistance in the underlying felony, the *Morris* majority also renders other aspects of section 189, subdivision (e) meaningless, which contravenes another convention of statutory interpretation. (See *People v. Griffin* (2004) 33 Cal.4th 1015, 1027 [one part of a statute should not be construed so as to make another part of the statute nugatory or redundant].) This becomes apparent when we look at the opening paragraph of section 189, subdivision (e).

That paragraph makes it clear that assistance in the commission of a qualifying felony is a foundational requirement for *all* felony murders. It states, "A participant in the perpetration or attempted perpetration of a [qualifying] felony . . . in which a death occurs is liable for murder only if one of the following is proven . . . ." (§ 189, subd. (e).)

This wording indicates that *something more* than mere assistance in the commission of the felony is required to satisfy the actus reus requirement in section 189(e)(2), otherwise the language in that provision would be superfluous. That *something more* is spelled out in the statute. In addition to requiring the defendant to assist the underlying felony, the

11

statute requires the defendant to assist the actual killer in the commission of first degree murder. (§ 189, subd. (e)(2).) To avoid redundancy, that must mean assisting the killer in the commission of the murderous act itself, not just the underlying felony.

Although the wording and structure of section 189, subdivision (e) undermine the *Morris* majority's interpretation of that provision, the majority justified its holding on the belief that it was consistent with the Supreme Court's decision in *Curiel, supra.* But *Curiel* was a direct aiding and abetting case, not a felony murder case. The Supreme Court went out of its way to make clear its holding was limited to the specific facts and theories that were presented in that case. (*Curiel, supra,* 15 Cal.5th at pp. 470, fn. 7 & 471.)

As the *Morris* majority pointed out, the *Curiel* court did pose a hypothetical involving the felony murder rule at one point of its analysis. (*Morris, supra,* 100 Cal.App.5th at p. 1026.) However, that hypothetical *assumed* the actus reus requirement for felony murder was established; it did not purport to define that requirement in the first instance. (*Curiel, supra,* 15 Cal.5th at p. 464.) Therefore, unlike the majority in *Morris*, we do not read the hypothetical as clarifying that requirement.[3]

---

[3] At the time *Curiel* was decided, neither did the Attorney General. Now he contends the *Curiel* hypothetical lends credence to the majority opinion in *Morris*. We note, however, that in response to an amicus curiae request to modify the *Curiel* opinion to make clear the hypothetical was not intended to reflect the court's understanding of the requirements for felony murder under section 189(e)(2), the Attorney General conceded the hypothetical did not provide an exhaustive list of all the elements necessary to impose liability under that section.

The *Morris* majority also relied on *People v. Dickey* (2005) 35 Cal.4th 884 (*Dickey*), in coming to its conclusion about section 189(e)(2)'s actus reus requirement. In *Dickey*, the Supreme Court interpreted the special circumstances provision contained in former section 190.2, subdivision (b). That provision provided, "'Every person whether or not the actual killer found guilty of intentionally aiding, abetting . . . or assisting any actor in the commission of murder in the first degree shall suffer death or confinement in state prison for a term of life without the possibility of parole[.]'" (*Dickey, supra*, 35 Cal.4th at p. 900, italics omitted, quoting former § 190.2, subd. (b); see now § 190.2, subd. (c).)

Dickey argued this language required proof he assisted the subject killings themselves, not just the underlying felonies during which the killings were committed. (*Dickey, supra*, 35 Cal.4th at p. 900.) That argument did not go over well because unlike section 189(e)(3), which requires the defendant to assist the "actual killer" in committing first degree murder, former section 190.2, subdivision (b) applied more broadly whenever the defendant assisted "any actor" in the commission of that offense. Applying the old felony murder rule that swept up all manners of assistance within its ambit, the Supreme Court ruled the language in former section 190.2, subdivision (b) applied whenever the defendant aided and abetted a felony that led to the victim's death. (*Dickey, supra*, 35 Cal.4th at p. 400.)

However, the felony murder rule has undergone a significant transformation since *Dickey* was decided. Precisely because it was so sweeping in its scope, the Legislature narrowed the felony murder rule through the enactment of Senate Bill 1437 to ensure the defendant's punishment is commensurate with his culpability. (*People v. Lewis, supra,* 11

13

Cal.5th at p. 971.) One of the ways it did that is by tethering the assistance requirement in section 189(e)(2) to the "actual killer," as opposed to "any actor." This word choice indicates the Legislature intended to require a closer nexus between the defendant's actions and the actual killing than was previously required under *Dickey*.

We thus find *Dickey* to be of little value in our analysis of section 189(e)(2). That decision would obviously be binding if we were interpretating the very same statutory language at issue in that case. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) However, as Justice Moore pointed out in her *Morris* dissent, "the Supreme Court's nearly two-decades-old analysis in *Dickey* does not apply to California's current felony-murder rule." (*Morris, supra*, 100 Cal.App.5th at p. 1033 (Moore, J., dissenting); cf. *People v. Ervin* (2021) 72 Cal.App.5th 90, 108 [jury's finding that the defendant assisted "another" in carrying out the crime of murder was insufficient to satisfy section 189(e)(2)'s requirement that the defendant assist "the actual killer"].)

In interpreting section 189(e)(2), the *Morris* majority also found it significant that section 189(e)(3) imposes felony murder liability on any person who was a major participant in the underlying felony and acted with reckless indifference to human life. The majority expressed concern that if section 189(e)(2), which requires the intent to kill, were interpreted to require assistance in the murderous act itself, "a person harboring the heightened mental state of . . . express malice . . . would need to engage in a more significant act vis-à-vis the killing, namely assist the killing itself, than someone with the less culpable mental state of reckless indifference to human

14

life, who would simply have to be a major participant in the underlying felony." (*Morris, supra*, 100 Cal.App.5th at p. 1027.)

The *Morris* majority rejected that interpretation for fear it would contravene the proportionality objective behind Senate Bill 1437. (*Morris, supra*, 100 Cal.App.5th at p. 1027.) However, there certainly could be situations where that would not be the case, such as when the defendant offers minor assistance to a qualifying felony not expecting (but secretly hoping) it will result in the death of another human being. Under that scenario, the defendant would be liable for felony murder under the *Morris* majority's interpretation of section 189(e)(2) if a death occurred during the felony, even if he was not present at the scene of the killing. But, despite harboring a malicious mindset, he could actually be *less* culpable than someone whose participation in the felony was so considerable that it amounted to reckless indifference to human life for purposes of section 189(e)(3). (See *People v. Banks* (2015) 61 Cal.4th 788, 801 [the reckless indifference requirement is established when a person is "willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create."].)

That would explain why the Legislature required assistance in the commission of first degree murder in section 189(e)(2), but it only required assistance in the underlying felony in section 189(e)(3). The Legislature presumably understood that culpability is derived from both the defendant's mental state *and* his actions, not one *or* the other. Our concern is that the *Morris* majority used the intent to kill requirement in section 189(e)(2) as a justification for eviscerating the remaining elements in that

15

provision. While the intent to kill is certainly a blameworthy mental state, standing alone it is not sufficient to render a defendant ineligible for resentencing. (*Curiel, supra*, 15 Cal.5th at pp. 461-468 [although the legislative history of Senate Bill 1437 makes clear that malice is generally considered a necessary prerequisite for murder, "[i]t is only one element. It does not by itself establish any valid theory of liability."].)

In attempting to defend the *Morris* majority's interpretation of section 189(e)(2), the Attorney General makes an additional argument regarding the interplay between that provision and section 189(e)(3). Namely, he asserts that interpreting the former provision to require proof that the defendant assisted the killer in committing the murderous act would render the latter provision superfluous.

This argument is based on two assumptions. First, assisting a murder with the intent to kill is the same as directly aiding and abetting the crime of murder. Second, directly aiding and abetting a felony is the functional equivalent of being a major participant in a felony for purposes of section 189(e)(3). Both of these assumptions are incorrect.

Contrary to the Attorney General's assertion, interpreting section 189(e)(2) to require assistance in the murderous act is not the same as requiring proof the defendant directly aided and abetted the crime of murder. *Curiel* made this evident by clarifying that to be liable for directly aiding and abetting a murder, the defendant must not only possess the intent to kill, he must also aid "'the commission of that offense with "knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.'" [Citation.]" (*Curiel, supra,* 15 Cal.5th at p. 463.) In other

16

words, the necessary mental state consists of both "intent and knowledge." (*In re Lopez* (2023) 14 Cal.5th 562, 579.)

In comparison, section 189(e)(2) merely requires the defendant to aid, abet *or* assist the actual killer in committing first degree murder. Even when the defendant harbors malice, assisting is not the same as aiding and abetting, as that term was defined in *Curiel*. Although section 189(e)(2) uses language that is commonly associated with direct aiding and abetting, it does not contain all the elements of that theory of liability. (See *Curiel, supra*, 15 Cal.5th at pp. 464-465; *In re Lopez, supra*, 14 Cal.5th at pp. 587-588.)

Even if it did, that would not render section 189(e)(3) superfluous because, contrary to the Attorney General's claim, not everyone who directly aids and abets a murder is liable for murder as a major participant under that section. In fact, our Supreme Court has made it clear that in order to satisfy the major participant element in section 189(e)(3), the defendant's personal involvement must be "greater than the actions of an ordinary aider and abettor[.]" (*People v. Banks, supra*, 61 Cal.4th at p. 802.) This requirement gives section 189(e)(3) independent force and meaning, apart from the liability described in section 189(e)(2).

For better or worse—and that is not our call to make—the People of the state, through their legislators, have determined that we defined murder too broadly in the last century. They enacted sweeping reforms to pull back from those definitions. To now rule that their intention was to define murder as broadly as would our dissenting colleague seems to us contrary to the language and goal of that legislation. We would leave it to them to make such an intention clearer.

DISPOSITION

The trial court's order denying appellant's section 1172.6 petition for resentencing is reversed, and the matter is remanded for the issuance of an order to show cause and an evidentiary hearing on appellant's entitlement to resentencing on his convictions for both first degree murder and attempted murder.


BEDSWORTH, ACTING P. J.

I CONCUR:


MOORE, J.

18

GOODING, J., Dissenting.

I respectfully dissent.

I agree with the analyses and conclusions set forth in *People v. Lopez* (Aug. 27, 2024, G061870) ___ Cal.App.5th ___ [2024 Cal.App.LEXIS 527]) and in the majority opinion in *People v. Morris* (2024) 100 Cal.App.5th 1016, review granted July 17, 2024, S284751, and believe those cases were correctly decided. I therefore would affirm the trial court's denial of defendant's petition for resentencing under Penal Code section 1172.6.

GOODING, J.